## L. O. JACOBSON v. MOHALL TELEPHONE COMPANY, a Corporation.

*1916 F 522*

(L.R.A. —, —, 157 N. W. 1033.)

**Money — paid in ignorance of the law — or mistake of law — voluntary payment — full knowledge of all facts — absence of fraud — moral obligation — in satisfaction of — action to recover — will not lie.**

An action will not lie to recover money which is alleged to have been

Note.—On avoidance of contracts for mutual mistake of facts, see note in 45 Am. Dec. 631.

paid under a mistake or an ignorance of the law, where such payment is voluntarily made, and with full knowledge of all the facts, and is not induced by any fraud or improper conduct on the part of the payee, and where such payment is made in satisfaction of a moral obligation to such payee or of a contingent liability.

Opinion filed April 5, 1916.

Action to recover money claimed to have been paid on account of a mistake of law.

Appeal from the District Court of Renville County, *Leighton,* J. Judgment for defendant. Plaintiff appeals.

Affirmed.

*F. B. Lambert,* for appellant.

The contract and bond in this case bound plaintiff to make good all defalcations of the office, by whomsoever made.

"The control of papers as securities implies such a possession thereof under a delivery to the holder, and such acceptance as will perfect the security." Bank of Monroe v. Gifford, 79 Iowa, 300, 44 N. W. 558; Sencerbox v. First Nat. Bank, 14 Idaho, 95, 93 Pac. 369.

"A conveyance with a power to hold and control the property involves the custody and possession of the trust property, both real and personal." Ure v. Ure, 185 Ill. 216, 56 N. E. 1087; Rev. Codes 1905, § 5347, Comp. Laws 1913, § 5903.

"A contract may be explained by reference to the circumstances under which it was made and the matter to which it relates." Code, §§ 5351–5353.

"Particular clauses of a contract are subordinate to those of general intent." Code, § 5354.

"A contract should be so construed as to carry out the intention of the parties, even though it is necessary to depart from the strict letter." Conn v. Lewis, 5 Litt. (Ky.) 66; Hildrith v. Forrest, 4 J. J. Marsh. 217; Shultz v. Johnson, 5 B. Mon. 497; Ross v. Garlick, 10 Rob. (La.) 365; Marcotte v. Coco, 12 Rob. (La.) 167; Salmon Falls Mfg. Co. v. Portsmouth Co. 46 N. H. 249; Hunter v. Miller, 6 B. Mon. 612; Clay v. Ballard, 9 Rob. (La.) 308, 41 Am. Dec. 328; Coghlan v. Stetson (C. C.) 22 Blatchf. 88, 19 Fed. 727; Williams v. Glover, 66 Ala. 189; Robinson v. Stow, 39 Ill. 568; Franklin L. Ins. Co. v. Wallace, 93 Ind.

7; Wagner v. Kenner, 2 Rob. (La.) 120; Erwin v. Greene, 5 Rob. (La.) 70; Kinney v. Hamilton County, 8 Ohio C. C. 433, 4 Ohio C. D. 448; Royalton v. Royalton & W. Turnp. Co. 14 Vt. 311; The Ada, 2 Ware, 408, Fed. Cas. No. 38; Livingston v. Arrington, 28 Ala. 424; Barney v. Newcomb, 9 Cush. 46; Noonan v. Bradley, 9 Wall. 394, 19 L. ed. 757; Otis v. United States, 20 Ct. Cl. 315; Norton v. Brophy, 56 Ill. App. 661; Donahoe v. Kettell, 1 Cliff. 135, Fed. Cas. No. 3,980; Chase v. Bradley, 26 Me. 531; 11 Century Dig. § 746, Contracts, col. 737, and cases cited; Pillow v. Brown, 26 Ark. 240; Bradley v. Marshall, 54 Ill. 173; Bobbitt v. Liverpool & L. & G. Ins. Co. 66 N. C. 70, 8 Am. Rep. 494; Smith v. Turpin, 20 Ohio St. 478; Byrne v. Marshall, 44 Ala. 355; Vaugine v. Taylor, 18 Ark. 65; Doe ex dem. Caillaret v. Bernard, 7 Smedes & M. 319; Munson v. Osborn, 10 Ill. App. 508; Morss v. Salisbury, 48 N. Y. 636.

"A contract will, where there is a doubt as to its true meaning, be construed most strongly against the party responsible for its language." Christian v. First Nat. Bank, 84 C. C. A. 53, 155 Fed. 705.

Sureties are said to be favorites of the law, and a contract of suretyship must be strictly construed to impose upon the surety only those burdens within its terms.  32 Cyc. 73; Jenkins v. Phillips, 18 Ind. App. 562, 48 N. E. 651; Rev. Codes 1905, § 5346, Comp. Laws 1913, § 5902; Red River Valley Nat. Bank v. Barnes; 8 N. D. 432, 79 N. W. 880; D. M. Osborne & Co. v. Strinham, 4 S. D. 593, 57 N. W. 776; 15 Cyc. 497, 498.

"Possession of the property by the defendant is distinguished from its mere custody, and, being one of the constituent elements of the offense, must be alleged in the indictment or information." 15 Cyc. 518, 526, and cases cited; State v. Kasper, 5 Wash. 174, 31 Pac. 636; United States v. Bornemann, 36 Fed. 257; Whitney v. State, 53 Neb. 287, 73 N. W. 696; State v. Wine, 7 N. D. 30, 72 N. W. 905; Krump v. First State Bank, 8 N. D. 75, 76 N. W. 995; Fegan v. Great Northern R. Co. 9 N. D. 30, 81 N. W. 39.

"The fact that plaintiff had the means of knowledge of facts at his command, and negligently failed to avail himself thereof, will not defeat his recovery, where no loss has resulted  to defendant." James River Nat. Bank v. Weber, 19 N. D. 702, 124 N. W. 952; Fagan v. Great Northern R. Co. 9 N. D. 30, 81 N. W. 39.

"Voluntary" means, "by the free exercise of the will; by design; purposely, without being moved, influenced, or impelled by others." 8 Words & Phrases, 7356, 7357; 40 Cyc. 220; Comp. Laws 1913, §§ 5487, 5846; 14 Cyc. 1123; Page, Contr. § 1246; Cooley, Torts, 506; 1 Parsons, Contr. 393.

The mistake here is one largely of fact, and money paid out by mistake of fact may be recovered back. Gregory v. Clabrough, 129 Cal. 475, 62 Pac. 72; Simpson v. Ferguson, 112 Cal. 180, 53 Am. St. Rep. 201, 40 Pac. 104, 44 Pac. 484; Modesto Bank v. Owens, 121 Cal. 223, 53 Pac. 552; Kreutz v. Livingston, 15 Cal. 346; 1 Chitty, Pl. 362, note 2; Moses v. Macferlan, 2 Burr. 1012, 1 W. Bl. 219; Lockwood v. Kelsea, 41 N. H. 187; Wilkins v. Stidger, 22 Cal. 231, 83 Am. Dec. 64; 30 Cyc. 1316, note 14; 15 Am. & Eng. Enc. Law, 2d ed. 676, 1003, 1005, 1006, 1007, and cases cited; 30 Cyc. 1318, note 17; 30 Cyc. 1320, 1321, and cases cited; James River Nat. Bank v. Weber, 19 N. D. 702, 124 N. W. 952; Rutherford v. McIver, 21 Ala. 750; Brown v. College Corner & R. Gravel Road Co. 56 Ind. 110; Koontz v. Central Nat. Bank, 51 Mo. 275; Douglas County v. Keller, 43 Neb. 635, 62 N. W. 60; Kingston Bank v. Eltinge, 40 N. Y. 391, 100 Am. Dec. 516; National L. Ins. Co. v. Jones, 1 Thomp. & C. 466, affirmed in 59 N. Y. 649; Altston v. Richardson, 51 Tex. 1; Neal v. Read, 7 Baxt. 333; Barth v. Jester Bros. 3 Tex. App. Civ. Cas. (Willson) 267; Rev. Codes, §§ 5391, 5711, Comp. Laws 1913, §§ 5947, 6280.

Money paid under a mutual mistake of fact may be recovered back. Norton v. Marden, 15 Me. 45, 32 Am. Dec. 132; Merchants' Bank v. M'Intyre, 2 Sandf. 431; Goddard v. Merchants' Bank, 2 Sandf. 247, affirmed (1850) 4 N. Y. 147; Guild v. Baldridge, 2 Swan, 295; Tybout v. Thompson, 2 Browne (Pa.) 27; United States v. Onondaga County Sav. Bank, 39 Fed. 259; United States v. Barlow, 132 U. S. 271, 282, 33 L. ed. 346, 351, 10 Sup. Ct. Rep. 77; Brown v. Tillinghast, 84 Fed. 71; Kelly v. Solari, 9 Mees. & W. 54, 11 L. J. Exch. N. S. 10, 6 Jur. 107; Ely v. Padden, 13 N. Y. S. R. 53; Lyle v. Shinnebarger, 17 Mo. App. 66; Kingston Bank v. Eltinge, 40 N. Y. 391, 100 Am. Dec. 516; Union Nat. Bank v. Sixth Nat. Bank, 43 N. Y. 452, 3 Am. Rep. 718; Duncan v. Berlin, 60 N. Y. 151; Lawrence v. American Nat. Bank, 54 N. Y. 432; National Bank v. National Mechanics' Bkg. Asso. 55 N. Y. 211, 14 Am. Rep. 232;

Mayer v. New York, 63 N. Y. 455; James River Nat. Bank v. Weber, 19 N. D. 702, 124 N. W. 952.

*Swenson & Rodsatter* and *Bradford & Nash,* for respondents.

The contract here is in writing. Under the law, preliminary negotiations cannot be reviewed or considered to contradict or vary the terms of a written contract. 6 R. C. L. p. 228, and cases cited; Comp. Laws 1913, §§ 5897, 5898.

The payment here made was voluntary and cannot be recovered back. There was no fraud or duress. There was no mistake of fact. Comp. Laws 1913, § 4876; 3 Words & Phrases, 2272; 30 Cyc. 1306; Harris v. Tyson, 24 Pa. 347, 64 Am. Dec. 661, 14 Mor. Min. Rep. 634; Holt v. Thomas, 105 Cal. 273, 38 Pac. 891; Kohler v. Wells, F. & Co. 26 Cal. 606; Brumagim v. Tillinghast, 18 Cal. 265, 79 Am. Dec. 176; Bucknall v. Story, 46 Cal. 589, 13 Am. Rep. 220.

If any mistake was made, it was one of law, and the parties are bound and no one can complain. Comp. Laws 1913, § 5855; Boggs v. Fowler, 16 Cal. 559, 76 Am. Dec. 561; Dill v. Shahan, 25 Ala. 694, 60 Am. Dec. 540; Goodenow v. Ewer, 16 Cal. 461, 76 Am. Dec. 540; Kenyon v. Welty, 20 Cal. 637, 81 Am. Dec. 137.

BRUCE, J. This is an action to recover money alleged to have been paid by mistake. The gist of the complaint is that the plaintiff on the 2d day of June, 1913, was employed by the defendant under a written contract as manager, lineman, and repairer of its telephone system, and that at about the same time the plaintiff gave to the defendant a bond to secure the said defendant against any personal dishonesty on the part of the plaintiff, but which bond did not contain any provision guarantying the honesty or integrity of any other employee of the company; that the plaintiff was not well versed in the construction of written contracts, and, when the written contract and bond were made, did not go over the same with sufficient detail to remember all the terms thereof; that the bond and contract were prepared by the defendant, and that the bond (though not the contract) was thereafter kept by the defendant alone; and that the plaintiff never thereafter saw such bond until after the 1st day of March, 1914; that on the 17th day of February, 1914, the officers of the company examined its books, and reported to the plaintiff that his office was $505 short in its account with the company, saying that

the plaintiff as manager was liable for all shortages, and that the bond secured the defendant against losses and for every dollar of such shortage, and that, if said sum of money was not paid, defendant would forthwith bring action on said bond to recover said amount; that the plaintiff, relying on said statement on the part of the officers and directors of the defendant, and fearing the result of such litigation on his future reputation with such bond companies, the possibility of his arrest and conviction of what, from their report, he supposed was a crime, and not having in his possession and control the bond above described, and knowing nothing of its contents except such as was told him by such officers, at once complied with their demands, and on the said 17th day of February, 1914, paid over to the bank at Mohall to the credit of the defendant the sum of $505, which said sum was then and there received and accepted by the defendant; that the payment of said sum was paid through a mistaken belief on the plaintiff's part that he was liable to defendant for such an amount, and the same was received by the defendant either through its mistake as to the terms of said bond and the proper meaning and construction thereof, or through fraud on the part of the officers of said defendant and the defendant itself through a misrepresentation to the plaintiff as to his liability thereon.

The evidence bore out the main allegations of the complaint, but failed entirely to prove any fraud on the part of the defendant, or any real threats, coercion, or duress, and that the money was paid over instantaneously and without due opportunity for consideration and the obtaining of legal advice. It showed that the plaintiff was twenty-one years of age, and although prior to the entering into the contract the defendants had written that "the operators do all the collecting and book work," the contract, which he always retained and kept, expressly provided that "the party of the second part (the plaintiff) hereby hires himself to the party of the first part on the terms and conditions hereinbefore set forth, and agrees to the conditions herein set forth, and *in addition to the foregoing duties agrees to look after all collections of all the accounts due and owing to the said party of the first part, and to deposit the proceeds in bank, and to keep a true and accurate set of books of all accounts and transactions of the said first party, and render statements whenever called upon by said first party, and to account at all times to said first party for all moneys that may come into his hands or*

*under his control in the* performance of his duties and in connection with his position." The contract also provided that the party of the second part was authorized to employ necessary help for constructing lines and designated and employed the plaintiff as "manager, lineman, and repairer" of the telephone system. The evidence showed that the plaintiff immediately entered upon his employment under the contract, but did not look after the collections except to a very limited degree. He did not obtain or seek to obtain the combination of the safe. He did not keep a set of books and, in short, seems to have taken no part in the management of the office or of the operators, but allowed the operators to have full charge thereof with practically no supervision by him, and to make all of the deposits. It showed that in the month of November, 1913, or thereabouts, the directors checked over the office, and it was agreed between them and the plaintiff that the office was $505 short. The directors did not claim to know who had taken the money, though the inference seems to have been that it was taken by one of the operators. The plaintiff asserted that he was not guilty, and at no time did the directors claim that he was. They merely took the position that he was liable for the shortage under his contract and also under his bond. The situation was fully and clearly talked over between the parties, in December, 1913, and February, 1914, on both of which occasions the plaintiff offered to give the company a note for the amount. This offer, however, was declined, and plaintiff was told that unless the money was forthcoming the directors of the company would have to take the matter up with the bonding company for investigation and settlement. Plaintiff testifies that he was afraid that the bonding company would prosecute him criminally if such action was taken, but nowhere is there any proof that any such criminal action was threatened. The proof is positive, in fact it is admitted, that the directors were a kindly body of farmers who were merely anxious to clear up the matter, as they were responsible to the stockholders, and who honestly believed that the plaintiff was liable both under his contract and under his bond, although they suspected that the actual theft was committed by one of the operators, and who made no threat except to refer the matter to the bond company, and who were absolutely without guile or malice. The testimony then shows that, after consulting an attorney at Mohall, who told him that the contract was binding, the plaintiff raised the money

and deposited it in the bank to the credit of the company, having first stipulated that the operator should be discharged; that the operator was discharged, and that the plaintiff then remained in the employ of the company for about a month, and then after consulting his present attorney, not as to the liability of the company to him, but as to the possibility of collecting the money from the operator, and being told by such attorney that he could recover the money from the company itself, he brought the present suit.

The question to be determined is whether the payment was voluntarily made or was made under a mistake of fact or under such a mistake of law that it can be recovered. It must be conceded that no liability was proved under the bond, as the bond merely secured the personal honesty of the plaintiff, and there is no proof or claim of personal dishonesty. There can, in our opinion, however, be no doubt as to his probable liability to some extent, at any rate, under the contract, which clearly made it his duty to supervise the office, and though not necessarily to himself collect the money or make the deposits, or keep the books, to supervise the work, and to see that it was properly and honestly done. The evidence is clear that he practically paid no attention whatever to this part of the business, and it is also quite clear that a part of the loss, at any rate, could have been prevented if he had not neglected his duty.

It is perhaps true that, as the facts turned out, he was not liable under his bond. It is however probably true that he was liable, to some extent at least, under the contract; that there was a shortage in the office; that the directors did not actually know who was responsible therefor; that it was a case in which, if he himself had been dishonest or implicated, the bondsmen would have been liable, and in which mere business prudence on the part of the directors would have required calling upon such bondsmen and asking them to make an investigation, if to do nothing more, and there can, therefore, be absolutely nothing in the contention that fraud was perpetrated or duress involved in their demand for the money, and statement that if it was not forthcoming they would report the matter to the surety company. Plaintiff says that he was afraid of a criminal prosecution, that might be brought by the bonding company. The fear, however, was merely in his own mind. The directors of the telephone company had waved no club over his head, and had made no

threats of such prosecution. He was liable, to a certain extent at least, under his contract. There may have been a mistake of law, both on the part of the directors and himself, as to his liability under the bond. There was no mistake as to his liability to some extent under the contract, and, if he himself had embezzled the money, of his liability under the bond.

The rule seems to be almost universally established that a mistake of law, even though mutual, will not of itself entitle one to sue to recover money which has been voluntarily paid. 30 Cyc. 1314; 7 Mod. Am. Law, 77–81, 421–432; 15 Am. & Eng. Enc. Law 2d ed. 1102.

All of the authorities also seem to hold that neither a mistake of law nor of fact will justify a recovery if the defendant can equitably and in good conscience retain the money. Under this rule the case would not be different if we held that the evidence showed that there was a mistake of fact as to the terms as well as of the legal effect of the bond. The most liberal of the courts indeed, and even the few which refuse to recognize any distinction between a mistake of law and a mistake of fact, or which limit the rule to an ignorance of public rights and duties rather than of private rights, go no further than to say: "That whenever, by a clear and palpable mistake of law or fact essentially bearing upon and affecting the contract, money has been paid without cause or consideration, which in law, honor, or conscience was not due and payable, and which in honor or good conscience ought not to be retained, it was and ought to be recovered back." Ray v. Bank of Kentucky, 3 B. Mon. 514, 39 Am. Dec. 479; Underwood v. Brockman, 4 Dana, 309, 29 Am. Dec. 407; Louisville v. Zanone, 1 Met. (Ky.) 151; Rupple v. Kissel, 24 Ky. L. Rep. 2371, 74 S.W. 220; 30 Cyc. 1314.

Even if we concede that in the case at bar there was a mistake of mixed law and fact, and that the plaintiff was ignorant not merely of the legal effect of the bond, but of its exact wording, and that the ignorance of its wording was the ignorance of a fact, can we say that "the money was paid without cause or consideration, which in law or honor or conscience was not due and payable, and which in honor or good conscience ought not to be retained?"

There can, to our mind, be no doubt that it was the duty of the plaintiff under his contract to act as manager of the office, and not as line

repairer merely. No matter what may have been his liability under the bond, it is perfectly clear that under his contract (a copy of which he had at all times retained) he expressly agreed "to look after all collections . . . and to deposit the proceeds in bank and to keep a true and accurate set of books of all accounts and transactions of the said first party, and render statement whenever called upon by said first party, and account at all times to said first party for all moneys that may come into his hands or under his control in the performance of his duties and in connection with his position." There can be no question that that position was that of manager as well as lineman, for that term was expressly used in the contract. There can be no question that the written contract superseded all prior letters in conversations. There can be no question that he alone of the employees was required to furnish a bond, which would have hardly been the case if the others were to be equally responsible with him for the receipts of the office and for its management. There can be no question that he paid no attention whatever to the business side of the office and to the safety of its funds. It is proved that, prior to his taking charge of the office, $40 had been misappropriated, and that this misappropriation was apparent upon the face of the books. And that if, upon taking charge of the office, he had supervised the books and accounts, much, if not all, of the subsequent loss and defalcation could have been prevented. Can there be any contention that his payment was entirely without consideration?

The rule also seems to be established that money paid under a mistake even of fact is not recoverable in equity if it is clear that the party making the payment intended to waive all inquiry into the fact. Neal v. Read, 7 Baxt. 333.

It seems quite apparent from the record before us that the plaintiff made all the investigations that he desired prior to paying the money, and that on two occasions he offered to give his note for the amount. He consulted an attorney in regard to the contract, and the attorney told him that the contract was good. He at no time asked to see the bond. Neither he nor the directors at any time pretended to know all of the law. All that the directors stated was that they had to arrive at some settlement, and that they were of the opinion that the plaintiff was liable under his contract and under his bond. All they proposed to do was to report the matter to the bonding company, so that an investigation

might be made and the liability of the plaintiff under bond and under his contract be determined. Rather than have this investigation made the plaintiff chose to pay the money over. He may have been mistaken as to the law as far as the bond is concerned and in regard to his liability thereunder, but he himself chose to prevent an inquiry. Money as a rule can only be recovered when paid by mistake and when there is no obligation to pay. In the case at bar there was an apparent obligation to pay at least a part of the amount.

We find nothing in our statutes which seems to change the general rule in regard to such matters. It is true that § 5844, Comp. Laws 1913, in dealing with contracts and in speaking of the general subject of consent, says that "an apparent consent is not real or free when obtained through duress, menace, fraud, undue influence or mistake;" and that § 5855 provides that mistake, within the meaning of this chapter, only arises from: 1. A misapprehension of the law, by all parties, all supposing that they knew the law and understood it, and all making substantially the same mistake as to the law. We do not understand, however, that these sections apply to voluntary payments, but merely relate to the consent to an agreement, and that the law of voluntary payments is as it was before the Code was adopted. That law, as we have before intimated, is that a voluntary payment can never be recovered when the payee can retain it in good conscience, and that, in order to justify a recovery in such a case on the ground of ignorance or mistake of law, some improper conduct must be able to be imputed to the payee.

We have carefully read the cases which are cited by counsel for appellant, but none of them seem to be controlling. The case of Gjerstadengen v. Hartzell, 9 N. D. 268, 81 Am. St. Rep. 575, 83 N. W. 230, was one in which the act sought to be pleaded as an estoppel to a personal claim of the plaintiff was done by him while acting as an administrator of an estate, and in executing a deed of land to which neither he nor the estate had any title, and by a deed which contained no covenants of warranty, either personal or otherwise, and on account of an ignorance of law which was shared in by all of the parties.

In the case of Gregory v. Clabrough, 129 Cal. 475, 62 Pac. 72, the mistake of law relied upon was caused by a misunderstanding of the law which was induced by the defendant's own attorney, and where the de-

fendant had no moral or legal right to the money paid or to any part thereof.

The case of Griffing v. Gislason, 21 S. D. 56, 109 N. W. 647, relates to the rescission of an executory contract, and not to the recovery of money which was paid upon a contingent liability.

The case of James River Nat. Bank v. Weber, 19 N. D. 702, 124 N. W. 952, was one in which "plaintiff's bank in good faith, and by mistake of *fact,* parted with money to which defendant was not entitled either legally or morally."

We do not here say that a mistake such as here occurring, if mistake there was, could not be pleaded as a defense in an action to enforce a contract in relation to which the mistake had been made. The courts, however, seem to have quite uniformly adopted the rule, and we must here adopt the rule, that an independent action will not lie to set aside a consummated act on the ground of mistake of law, unless special circumstances, such as undue influence, misrepresentation, or misplaced confidence, are shown; and no such special circumstances are shown, in the case at bar. See Boggs v. Fowler, 16 Cal. 559, 76 Am. Dec. 561; Dill v. Shahan, 25 Ala. 694, 60 Am. Dec. 540; Goodenow v. Ewer, 16 Cal. 461, 76 Am. Dec. 540; Kenyon v. Welty, 20 Cal. 637, 81 Am. Dec. 137; Erkens v. Nicolin, 39 Minn. 461, 40 N. W. 567.

The judgment of the District Court is affirmed.

Goss, J. (concurring specially). Concur in affirmance. But that conclusion is reached under a somewhat different course of reasoning than that adopted by Justice Bruce. The complaint asks a recovery for money paid either under mutual mistake of fact or fraud induced by the defendant. There is no sufficient proof of fraud, so that alternative is eliminated. The answer is, in effect, a general denial as to the payment having been made under mutual mistake of fact or fraud. And coupled therewith, "as a further defense to plaintiff's complaint," facts establishing a liability of plaintiff to defendant under a breach of contract to supervise the corporate business and accounts, superintend collections, and the deposit of its collections in the bank, and a shortage arising between the collections made and the deposits placed in the bank is set forth in detail and as arising upon a contract and bond made, executed, and delivered by the plaintiff to the defendant company. This

affirmative defense is in the nature of a counterclaim against any liability that plaintiff may establish under his complaint, alleging payment by him under mutual mistake of fact. The answer then is the equivalent of a denial that the payment was made under a mutual mistake of fact, coupled, however, with a counterclaim based upon breach of contract arising out of the transaction should the court find with plaintiff that the payment was made under a mutual misapprehension and mistake of fact.

The law seems to be well settled that "a voluntary payment, with a knowledge of all the facts, cannot be recovered back, though there was no debt. But a payment under a mistake of fact may be. Adams v. Reeves, 68 N. C. 134, 12 Am. Rep. 627; Pool v. Allen, 29 N. C. (7 Ired. L.) 120; Newell v. March, 30 N. C. (8 Ired. L.) 441; Lyle v. Siler, 103 N. C. 261, 9 S. E. 491; Worth v. Stewart, 122 N. C. 258, 29 S. E. 579; Macon County v. Jackson County, 75 N. C. 240; Pearsall v. Mayers, 64 N. C. 549. In Pool v. Allen, 29 N. C. (7 Ired. L.) 120, Ruffin, Ch. J., states the reason for this principle with his usual force; 'There was no intention here to make a gift of the money, so as in that sense to constitute it a case of a voluntary payment. On the contrary it was clear that the money was paid out and received in discharge of a debt then believed to subsist. In that, there was a total mistake on the part of the person making the payment and probably on that of the receiver also; and it is plain that money thus got under a mistake and for no consideration cannot be kept ex equo et bono.' " The foregoing, from the opinion in Simms v. Vick, 151 N. C. 78, 24 L.R.A.(N.S.) 517, 65 S. E. 621, 18 Ann. Cas. 670, so clearly states the rule and the law to be examined under these facts that no better can be done than to set it forth. See also note appended thereto, citing cases from many states. As to the former proposition, that money paid with knowledge of all the facts cannot be recovered back, see the decision of our own court in Dickinson v. Carroll, 21 N. D. 271, 37 L.R.A.(N.S.) 286, 130 N. W. 829. Even though, as in that case, it was the payment of accommodation paper held by a third person for which the maker received nothing. It is equally well settled in this state that a payment made under a mistake of fact may be recovered by action. James River Bank v. Weber, 19 N. D. 792, 124 N. W. 952, citing, applying, and explaining Fegan v. Great Northern R. Co. 9 N. D. 30, 81 N. W. 39.

34 N. D.—15.

With the law settled, the facts in the case under the proof and the issues presented in the pleadings are next to be considered. First, was the payment made under a mutual misapprehension of the facts? It would seem so. The plaintiff has testified that though he received a copy of the contract and bond in June previous to the payment of the money in February, yet they were not accessible, and he did not become familiar with the contract and bond to know its contents until some little time after he had made the payment herein sought to be recovered, and that he made the payment under the misapprehension that the bond made him liable for the misappropriation of the office employees in the local telephone exchange over which, according to his contract, he was manager. The bond in nowise makes him liable for these shortages, which, if they exist at all, must be embezzlements of some of the employees other than the plaintiff. The bond merely insures his personal honesty, and it is admitted that only a small percentage of the money was received or went through his hands, and that he has accounted for all of that. The basis of liability lies in whether he was responsible for the defalcations of others. And it is impossible to believe that he would have made this payment had he not understood that he was bonded to make it, and, under the bond, was surety for the defalcations of the entire office force. And it is plain that the directors and officials of the telephone company knew of his misapprehension in this particular, or else assumed that he construed the bond contrary to its express provisions or in connection with the contract. If the recovery turned upon the question of whether this payment was made under mutual mistake of fact alone, or, in other words, upon the complaint and a general denial thereto, the plaintiff should recover.

But we now reach the affirmative defense, i. e., in substance that the money, although paid under mistake of fact, should be retained as the payment for and settlement of plaintiff's liability to defendant company under the terms of the contract of employment, independent of and additional to any liability on the bond. This defense, as heretofore stated, is in the nature of a counterclaim or additional defense as termed, and therefore the burden of its proof under a fair preponderance of the evidence is upon the party asserting it, the defendant. And there is substantial proof of plaintiff's liability to the telephone company under that contract. The proof of shortage is conceded by all parties. There

is no dispute in the amount. It is shown by the difference between receipts of the office, according to the office books, and the deposits made in the bank. It amounts to nearly $100 a month during the time of such superintendency of the financial affairs of the company and the discovery of any discrepancy. To be true he was employed according to the contract to do well-nigh the impossible, *i. e.*, build telephone lines, be away from the office a week at a time as construction manager at a time when he has contracted "to look after all collections of all accounts due and owing," "and to account at all times for all moneys that may come into his hands or under his control in the performance of the duties and in connection with his position" as "manager, lineman, and repairer of its telephone system." But he has unmistakably contracted to do this. And concededly he has failed to even realize his duties, not to mention performing them, and a loss has resulted to the telephone company therefrom. This loss, while perhaps debatable as a liability against plaintiff, is one dependent upon the proof and the construction to be given to the contract. If the contract is open to two constructions, one supporting and the other negativing liability, resort may be had as to how the parties have construed it as between themselves. The officials for the defendant have testified that this liability was considered and discussed during the settlement under which this money was paid. Even though plaintiff paid under a mistake of fact on his part, apparently the payment was received in settlement of this contingent liability, and to that extent it was not both paid and received under mutual mistake of fact. And the trial court, under a double motion for directed verdict, has passed upon the facts adversely to plaintiff in this respect. In so doing it has held the counterclaim supported by a fair preponderance of the evidence. Its findings have the force of a special verdict, and must prevail unless clearly contrary to a preponderance of the evidence, this being a jury case. Under this rule the finding must be sustained and the judgment affirmed.

FISK, Ch. J. (dissenting). I am unable to concur in the above opinion. It seems to be the theory of my associates that the action will not lie because there was some liability on plaintiff's part to respond in damages to defendant corporation for a breach of the contract of employment, it being conceded that there was no such liability under the

bond. This reasoning, to my mind, is fallacious. It is predicated, I think, upon a mistaken view both of the law and the facts. The opinion states: "That no liability was proved under the bond, as the bond merely secured the personal honesty of the plaintiff, and there is no proof or claim of personal dishonesty. There can, in our opinion, however, be no doubt as to his probable liability to *some extent,* at any rate, under the contract," etc. There are two sufficient answers, as I view it, to the conclusions of the majority. First, the money was paid under a mutual mistake, both parties believing that there was a liability under the bond, there being no claim or suggestion of liability under the contract. Second, there was, in fact and law, no liability to any extent under the contract; but if there was liability "to some extent" this would not justify defendant in retaining the full sum of $505. The opinion does not enlighten us as to the amount of such liability, but it appears to be assumed therein that if any liability whatever existed under the contract that this will defeat plaintiff's action. I confess my inability to perceive just how defendant could, under the facts, establish a cause of action against plaintiff for a breach of the contract.

To my mind the appeal presents the simple question as to whether, in equity and good conscience, the plaintiff is entitled to the repayment of this money. It was paid, manifestly, through a mutual mistake as to defendant's legal rights and plaintiff's liability. No such rights and corresponding liability existed, and the money was paid without any consideration whatever. Under these facts it is elementary that plaintiff, in equity and good conscience, ought not to be permitted to retain such money. I think the judgment should be reversed and a new trial ordered.