[File No. 7183]

ROHRVILLE FARMERS UNION ELEVATOR COMPANY, a Cooperative Association, Respondent, v. JOSEPH FRISON, Appellant.

(42 NW2d 354)

Opinion filed April 20, 1950.  Rehearing denied May 9, 1950

*F. T. Cuthbert,* for appellant.
*Sinness & Duffy,* for respondent.

Morris, J. The plaintiff seeks to recover from the defendant the sum of $1220.00 which it alleges was paid to the defendant under a mistake of fact. The case was tried to a court without a jury. From a judgment in favor of the plaintiff the defendant appeals and demands a trial de novo.

The plaintiff is a grain warehouseman with its place of business located in the town of Rohrville. The defendant is a farmer operating in the trade territory served by the plaintiff. On September 4, 1947, the plaintiff and defendant entered into a written contract whereby the defendant agreed to deliver to the plaintiff on or before December 4, 1947, five hundred bushels of No. 2 amber or better durum for which the plaintiff at that time paid the defendant the total purchase price of $1220.00.

On September 15, 1947, the defendant sold to the plaintiff on a similar contract 1,000 bushels of the same kind and quality of durum wheat for which he was paid $2,510.00.

On October 23, 1947, the defendant suffered a severe heart attack which resulted in his total incapacity and his confinement in a hospital until some time during the week before Christmas of that year. In the meantime the defendant's wife transacted all of his business for him.

The amber durum covered by the two contracts above mentioned and in addition thereto other amber durum and a small quantity of barley belonging to the defendant were delivered to the plaintiff's elevator. On November 5, 1947, the defendant's wife went to the elevator and made a settlement covering all of the amber durum and the barley. As a result of this settlement she received a check for $3,483.00 payable to Joe Frison, which she deposited to the joint bank account of herself and her husband. As a result of a mistake by the plaintiff's agent who made the settlement, the amount of the check included $1,220.00 for the 500 bushels of amber durum covered by the first contract and for which the defendant had received payment at the time the contract was executed.

Between November 4 and November 7, 1947, there was delivered to the plaintiff 728 bushels 10 pounds of red durum belonging to the defendant which was not involved in any way in the settlement for the amber durum which was made on Novem-

ber 5. The red durum remained in the elevator until March 17, 1949, when it was sold pursuant to a stipulation of the parties without prejudice to the rights of either party to the lawsuit. It was also stipulated into the record during the trial of the case that the "grain was sold on the 17th of March, 1949, for the sum of $1194.22 and that the plaintiff is holding the check in that amount subject to the decision of this Court but that such sale pursuant to such stipulation in no way involves the merits of this lawsuit."

When the last of the red durum was hauled to the elevator on November 7, 1947, the price was $2.60 per bushel. On May 15, 1948, it was $2.08; and from August 2nd to August 10th, it was $1.75 to $1.76. The price when finally sold pursuant to stipulation was $1.77 and the accumulated storage charges then amounted to $94.64. The fall in the price of red durum is the real cause of this lawsuit.

The mistake in the settlement of November 5, 1947, did not become known to the plaintiff's agent in charge of the elevator until a month or so later when the error was discovered by plaintiff's auditor and the agent notified thereof. The agent testified that when he learned of the error he knew that the defendant was very sick and the roads were blocked by snow. He did not inform the defendant about the error until the defendant came to the elevator in the spring or summer of 1948. Due to the fall in the price in red durum the defendant desired to haul it out of the elevator back to his farm to use for feed. The only serious dispute between the parties as to the facts concerns the time when the defendant came to the elevator to make arrangements for the return of the red durum. Plaintiff's agent says it was about the middle of May, but the defendant insists that it was during the first part of August at the beginning of harvest. There is no dispute as to the fact that the defendant first learned that he had been paid twice for 500 bushels of amber durum when he went to the elevator to arrange for the return of the red durum. After he had learned of the plaintiff's claim of overpayment his wife figured over the accounts and verified the fact that a mistake had been made.

The plaintiff seeks to recover on the ground that its agent

overpaid the defendant because of a simple mutual mistake. The defendant, on the other hand, contends that plaintiff's agent was negligent in figuring up the settlement of November 5, 1947; that defendant's wife knew little about his business and accepted the agent's figures without question; and that the agent is primarily responsible for the error. He further contends that on November 7 the defendant had in the plaintiff's elevator red durum sufficient in value to have more than covered the overpayment at the price as of that time and for some considerable time thereafter; that the plaintiff, as a warehouseman, had a lien on the red durum for the amount due it; and that it could have foreclosed this lien and sold the red durum in an amount sufficient to pay the claim on ten days' notice. He argues that its failure to foreclose its lien, or to notify the defendant of the error promptly and thus give him an opportunity to sell the red durum, when taken together with the fall in price, resulted in such a change in the defendant's position as to bar the plaintiff's right to recover the overpayment, at least to the extent of the reduction in value of the quantity of red durum that would have repaid the amount of plaintiff's claim. The parties are agreed that at no time did the defendant attempt to sell the red durum until it was sold by stipulation.

It is the law in this jurisdiction, and in most others, that a payment made under the influence of a mistake of fact may be recovered provided that the payment has not caused the payee to change his position to his detriment. Chrysler Light & Power Company v. Belfield, 58 ND 33, 224 NW 871, 63 ALR 1337; 40 Am Jur Payment Section 187. The defendant acknowledges the general rule thus stated but asserts that it does not apply where the mistake was induced by the negligence or forgetfulness of the payor without fault on the part of the payee. He would support his position by citing Fegan v. Great Northern Railway Company, 9 ND 30, 81 NW 39. There are statements in that case when considered without reference to the facts then before the court that seem to lend support to the defendant's contention. However, that decision is well summarized in the two paragraphs of the syllabus which state:

"In an action to recover money paid under a mutual mistake of

fact, where it appears that the plaintiff prior to and at the time of paying over the money had in his hands the present means of ascertaining whether or not the fact in question existed, but negligently omitted to make the investigation, which, if made, would have discovered the fact in question, and where the further fact appears that on account of such negligence of the plaintiff the defendant lost a valuable right, and that the defendant cannot be placed in statu quo, the plaintiff cannot recover.

In such actions the plaintiff cannot recover when, in equity and good conscience, he ought not to recover."

In Bank v. Weber, 19 ND 702, 124 NW 952, it is said "Upon the question of the right to recover moneys negligently paid to another through a mistake of fact the authorities are somewhat in conflict, but the weight of authority and, as we think, the better reasoned cases support such recovery. . . . Fegan v. Great Northern Ry. Co., 9 ND 30, 81 NW 39, presents a case where a recovery was denied to plaintiff who had paid money to defendant through negligence in not making an investigation of facts accessible to him, but a controlling factor in the decision was the fact that plaintiff's gross neglect in this respect resulted in loss to defendant."

Paragraph 4 of the syllabus in Bank v. Weber, states "The fact that plaintiff had the means of knowledge of the facts at his command, and negligently failed to avail himself thereof, will not defeat his recovery, when such negligence has not resulted in loss or damage to the defendant."

The rule thus stated in Bank v. Weber applies to the kindred situation where the payment is made through forgetfulness of the fact that the amount has already been paid. Virginia Insurance Rating Bureau v. Commonwealth, 186 Va 270, 42 SE2d 419; Simms v. Vick, 151 NC 78, 65 SE 621, 24 LRA (NS) 517; 18 Annotated Cases 669, and notes; Baltimore & Susquehanna Railroad Company v. Faunce, 6 Gill 68, 46 Am Decisions 655; 40 Am Jur Payment Section 197. It is clear that the conditions under which the payment was made were such as to entitle the plaintiff to maintain an action for its recovery.

This is an action for money had and received. It is a legal action based upon an implied promise on the part of the defend-

ant to refund the amount that was paid to him under a mistake of fact. The law will enforce this promise if the defendant is not in good conscience entitled to retain the payment. Bank v. Weber, 19 ND 702, 124 NW 952; Dickey County v. Hicks, 14 ND 73, 103 NW 423. Where money has been paid under a mistake of fact and the payee in reliance upon the payment has changed his position to his detriment he cannot be compelled to make repayment for good conscience does not then demand it. Lark Equity Exchange v. Jones, 42 ND 145, 171 NW 863; Lucte v. Bird, 277 Mich 27, 268 NW 799; Grand Lodge v. Towne, 136 Minn 72, 161 NW 403; Smith v. Rubel, 140 Ore 422, 13 Pac2d 1078, 87 ALR 644; Hibbs v. First National Bank, 133 Va 94, 112 SE 669, 25 ALR 120.

The record does not show whether or not a negotiable warehouse receipt was issued for the red durum. This matter, however, is not of controlling importance for we need not determine whether, as the defendant contends, the plaintiff had a warehouseman's lien on the red durum for the amount paid by mistake in settling for the amber durum. Assuming such a lien did exist, there was no obligation on the part of the plaintiff to foreclose it and sell the red durum merely because it subsequently developed that the market was higher in November than it was the following May or August. There is no duty on the part of a warehouseman to foreclose a warehouseman's lien to protect the owner against speculative market changes. Had the market subsequently gone up instead of down, an early foreclosure would have been detrimental to the defendant. No legal duty on the part of the warehouseman can rest on such a speculation.

The next question of fact is, did the defendant suffer material detriment from the overpayment prior to being informed of the mistake? Did it cause him to act or refrain from acting to his disadvantage? The defendant has suffered a loss as a result of two factors: The fall in the market price of red durum and his failure to sell before the fall. It does not appear that the defendant either acted or refrained from acting with respect to the red durum because of reliance upon the overpayment for the amber durum. What does appear is that the defendant could

have acted to his advantage had he known the price of red durum would fall. But this he could have done whether he had been notified of the mistake at an earlier date or not. The defendant's argument is based upon the premise that his failure to sell the red durum at a high price was induced by his lack of knowledge that he had been overpaid for the amber durum. The record does not support this premise. It rests upon surmise and not evidence. The transactions concerning the two kinds of durum were entirely separate. As a result of the first transaction the defendant received $1,220.00 to which he was not entitled. When the second transaction is viewed in retrospect it appears that it would have been to the advantage of the defendant to have sold the red durum shortly after it was hauled to the warehouse. That this was not done is not the fault of the plaintiff. It had no responsibility for making the sale. The overpayment was deposited to the defendant's account in the bank. If the defendant's wife had been notified of the error as soon as it was discovered she might have returned the money to the plaintiff from the bank account or she might have sold enough of the red durum to have taken care of the overpayment. The record discloses no circumstances to indicate the choice she would have made. Any attempt to determine now what her choice would have been rests upon pure speculation and lapses into conjecture. The plaintiff is entitled to have returned to it the amount paid by mistake to the defendant. The judgment is affirmed.

NUESSLE, C. J., BURKE, GRIMSON and CHRISTIANSON, JJ., concur.