Tufte, Justice.
[¶ 1] Linda Nelson, Jill Mattson, Jeffrey Mattson, and Joan Louise Mattson appeal from the district court's judgment quieting title to property in the Steven R. Mattson Living Trust and the Roald F. Mattson Living Trust (the "Trusts"), and awarding damages to Steven R. Mattson, the Steven R. Mattson Living Trust, and the Roald F. Mattson Living Trust (collectively, the "Mattsons"). Because the joint tenancy between Leif, Alf, and Roald Mattson was not severed prior to Leif Mattson's death, the district court did not clearly err by quieting title to property in the Trusts. Further, the district court did not clearly err by awarding damages to the Trusts for the oil and gas lease payments under a theory of conversion. However, the district court erred by awarding damages to Steven Mattson for the amount he paid to Leif's heirs for the purported interest they owned in the surface of the property because unjust enrichment was unavailable and the voluntary payment doctrine applies. We affirm in part and reverse in part.
I
[¶ 2] In 1973, Julia Alvstad deeded real estate in Williams County (the "Property") to her sons Leif, Alf, and Roald Mattson (the "Mattson Brothers") as joint tenants with the right of survivorship. The Mattson Brothers farmed and leased the Property together, equally sharing income and expenses. The business, RAL Farm, filed partnership tax returns.
[¶ 3] Leif Mattson died in 2001, leaving his estate to his children. Leif's children received rental payments for a one-third interest in the Property. One of Leif's children settled all claims, and the other four children, or their successors, are the Appellants here.
[¶ 4] The district court found that in 2003, Alf Mattson deeded his one-third interest in the Property to his nephew, Steven Mattson. In 2010, Leif's heirs and successors sold to Steven Mattson by quitclaim deed a one-third interest, reserving mineral rights. Leif's children continued to *174 receive one-third of the payments under certain oil and gas leases of the Property.
[¶ 5] In 2012, Steven and Joyleen Mattson transferred Steven's purported two-thirds ownership interest in the Property to the Steven R. Mattson Living Trust. In 2013, Roald and Marilyn Mattson transferred to the Roald F. Mattson Living Trust Roald's purported one-third ownership interest in the Property. After having a law firm review the chain of title in the Property, Steven Mattson advised Leif's children in 2013 that they had sold him land he already owned and that they were wrongfully receiving payment for minerals they did not own.
[¶ 6] Following a bench trial, the district court concluded that "at the death of Leif Mattson, his ? ownership in the subject property automatically transferred to Alf and Roald Mattson as surviving joint tenants, each with a ½ interest in the subject real property," and that "the sale of Alf Mattson's ? interest to Steve Mattson severed the joint tenancy, with Steve and Roald Mattson each then owning a ½ interest as tenants in common." The court quieted title to the Property in Steve and Roald's successors-in-interest, the Trusts. Further, the district court awarded Steven Mattson damages for the amount that he paid to Leif's heirs for their purported one-third interest in the surface of the Property under unjust enrichment, and awarded the Trusts damages for the oil and gas lease payments made on the Property under the theories of unjust enrichment and conversion.
II
[¶ 7] The Appellants argue that the Mattson Brothers formed a partnership, RAL Farm. The district court found that the Mattson Brothers had formed a joint venture. Whether the Mattson Brothers' relationship is categorized as a partnership or as a joint venture for this dispute does not affect the outcome here. See SPW Associates, LLP v. Anderson , 2006 ND 159, ¶ 8, 718 N.W.2d 580 (stating, "A joint venture is generally considered akin to a partnership, although more limited in scope and duration, and principles of partnership law apply to the joint venture relationship."). In SPW Associates , we sustained the district court's determination that a supplier and builder were involved in a joint venture to build airplanes, and concluded that the supplied parts became joint venture property. Id. at ¶ 17. Thus, property can be owned by a joint venture, much as property can be owned by a partnership. See id. ; see also Kelly v. Lang , 62 N.W.2d 770, 774 (N.D. 1953) ; Gehlhar v. Konoske , 50 N.D. 256, 195 N.W. 558, 561 (1923). Because the rights of a joint venture are akin to a partnership in this context, we refer to RAL Farm as a partnership and the individuals involved in the business as partners for sake of simplicity.
III
[¶ 8] The Appellants argue that the Property was transferred to the partnership, severing the joint tenancy. Questions of fact are reviewed under the clearly erroneous standard. N.D.R.Civ.P. 52(a)(6). "A finding of fact is clearly erroneous if there is no evidence to support it, if the finding is induced by an erroneous view of the law, or if the reviewing court is left with a definite and firm conviction a mistake has been made." Laib v. Laib , 2008 ND 129, ¶ 10, 751 N.W.2d 228.
[¶ 9] Severance of a joint tenancy may be accomplished through alienation. Renz v. Renz , 256 N.W.2d 883, 886 (N.D. 1977). "It appears settled that joint tenants may contract with each other regarding income to be derived from jointly held property without thereby terminating the joint tenancy."
*175 State Tax Comm'r v. Tuchscherer , 130 N.W.2d 608, 614 (N.D. 1964). "Property which is titled in the name of an individual partner may nevertheless be partnership property." Eckert v. Eckert , 425 N.W.2d 914, 915 (N.D. 1988). "The relevant inquiry is whether the partners intended that the property in question be partnership property or individual property." Id.
[¶ 10] The Appellants contend that the Mattson Brothers intended for the Property to be partnership property used in the RAL Farm business. They argue the Mattson Brothers' intent is shown: (1) by their having listed the Property on the partnership tax returns as an asset of the partnership; (2) by their having used partnership funds to pay the Property taxes and expenses; (3) by each partner having had "the right to their share of profits and liability for their share of losses in accordance with their ownership interest in the partnership"; (4) by Roald Mattson and Alf Mattson having stated that the Property is partnership property after Leif Mattson's death; and (5) by Roald and Alf having failed to challenge the transfer of Leif's ownership interest in the partnership (rather than the Property) to his heirs.
[¶ 11] The partnership tax returns indicate that RAL Farm received rental income from the Property, but do not clearly indicate RAL Farm owned the Property. See Cyrus v. Cyrus , 242 Minn. 180, 64 N.W.2d 538, 543 (1954) (stating, "The fact that such realty is used for partnership purposes is not of itself, when standing alone, sufficient to establish an intent to contribute it to the partnership assets."); In re Mahoney's Estate , 233 Wis. 138, 288 N.W. 763, 765 (1939) (concluding that use of a partner's individually-owned property, from which the partnership derived income, does not transform the property into an asset of the partnership). Although payment of the property taxes and expenses with partnership funds generally indicates the partners' intention to treat the property as partnership property, it is not dispositive on the issue. See Cyrus , 64 N.W.2d at 543-44.
[¶ 12] The apparent division of profits and losses consistent with the Mattson Brothers' partnership interest is similarly unenlightening as to ownership of the Property, because the same division would be achieved on the basis of ownership shares in the Property. The Mattson Brothers owned the Property in one-third shares. They were also equal partners in RAL Farm. Thus payment of rental income on the basis of ownership in the Property would yield the same result as payment according to partnership interest.
[¶ 13] Appellants' argument that Roald and Alf stated the Property is partnership property relies on the testimony of Gail Mattern, a sister-in-law to Linda Nelson. Steven Mattson testified that he never believed RAL Farm owned the Property. "On appeal, this Court does not reweigh conflicts in the evidence, and we give due regard to the district court's opportunity to judge the credibility of the witnesses." Fischer v. Berger , 2006 ND 48, ¶ 8, 710 N.W.2d 886. Because we will not reweigh the evidence presented at the district court, this argument must fail.
[¶ 14] Lastly, the Appellants argue that because Leif's estate plan referred to an ownership interest in a partnership (rather than the Property) and Roald and Alf failed to challenge the subsequent transfer of Leif's estate to Leif's heirs, this shows the Mattson Brothers' intention of transferring the Property to the partnership. The Appellants, however, do not state whether Alf and Roald were aware of the contents of Leif's estate plan. Leif's classification of his own ownership interest provides marginal support for the intentions of the Mattson Brothers as a whole.
*176 [¶ 15] Further evidence that the Mattson Brothers did not intend the Property to be partnership property is the 1997 oil and gas leases. These leases were between each brother, individually, and Diamond Resources. Each brother signed a separate contract leasing the Property. Roald's contract stated that he was "a married man dealing in his sole and separate property." Additionally, the 2010 conveyance of Leif's heirs' interest in the Property to Steven Mattson provides evidence that the Property was not partnership property. First, the deed's plain language clearly indicates that the heirs are transferring their rights in the Property, not rights in a partnership. Second, the heirs reserved the subsurface rights. To reserve the subsurface rights, the heirs must have thought they owned an interest in the Property, distinct from a share of the partnership. If the Property was truly partnership property, the heirs would have had only the ability to offer shares in the partnership, not directly convey the partnership's assets. Reservation of mineral rights is wholly inconsistent with the partnership owning the Property.
[¶ 16] "Legal title is at least prima facie evidence of actual ownership so that where land is previously owned by a partner individually, the fact that he retains title after formation of the partnership is evidence that the land is not donated as a partnership asset." Bachand v. Walker , 455 N.W.2d 851, 855 (S.D. 1990). "[G]enerally, in order to constitute land partnership property its acquisition must have been 'with partnership funds or on partnership credit and for the uses of the partnership'; these two factors must concur and the mere use of real estate for partnership purposes does not 'impress upon it the character of partnership property.' " McGowin v. Robinson , 251 Ala. 690, 39 So.2d 237, 239 (1949). Here, the Property was deeded to the Mattson Brothers as joint tenants. They remained record owners of the Property until Leif's death. Although the Property was used in the RAL Farm business, it was not purchased by the business, either with partnership funds or on partnership credit. The Appellants present some evidence that the Mattson Brothers intended for the Property to be partnership property, but sufficient evidence indicating that the Property was not transferred to the partnership supports the district court's findings and its conclusion that the joint tenancy was not severed by conveyance to RAL Farm prior to Leif's death.
IV
[¶ 17] The Appellants argue that the purchase price paid by Steven Mattson to Leif's heirs for their interest in the surface of the Property cannot be recovered by the Mattsons under unjust enrichment. "Unjust enrichment is a broad, equitable doctrine which rests upon quasi or constructive contracts implied by law to prevent a person from unjustly enriching themselves at the expense of another." Smestad v. Harris , 2012 ND 166, ¶ 16, 820 N.W.2d 363.
A determination of unjust enrichment is a conclusion of law because it holds that a certain state of facts is contrary to equity, and therefore, a district court's determination whether there has been unjust enrichment is fully reviewable. The court's findings of fact supporting its unjust enrichment determination are subject to the clearly erroneous standard of review under N.D.R.Civ.P. 52(a). A finding of fact is clearly erroneous if there is no evidence to support it, or if, based on the entire record, we are left with a definite and firm conviction a mistake has been made.
*177 Broten v. Broten , 2017 ND 47, ¶ 10, 890 N.W.2d 847 (quotations and citations omitted). When an express contract exists between parties, unjust enrichment is inapplicable. First Nat'l Bank of Belfield v. Burich , 367 N.W.2d 148, 154 (N.D. 1985).
[¶ 18] In First Nat'l Bank of Belfield , the district court awarded damages on the basis of unjust enrichment. We concluded, "[A]lthough the trial court's legal rationale for its award was incorrect [due to the existence of a contract], the award itself was not. A correct outcome will not be set aside merely because the trial court assigned an incorrect reason for its decision if the results are the same under applicable reasons." Id. (quotations omitted).
[¶ 19] Here, a contract in the form of a deed existed between Steven Mattson and Leif Mattson's heirs. Thus, recovery under unjust enrichment is unavailable. In First Nat'l Bank of Belfield , damages were recoverable under breach of contract. Id. Although a contract exists here, breach of contract is unavailable because of the use of a quitclaim deed. Generally, "a quitclaim deed conveys only the grantor's interest or title, if any , in property, rather than the property itself." Carkuff v. Balmer , 2011 ND 60, ¶ 10, 795 N.W.2d 303 (emphasis added); see also Nix v. Tooele Cty. , 101 Utah 84, 118 P.2d 376, 377 (1941) (grantee could not recover the purchase price from the grantor under a quitclaim deed when it was discovered that the grantor did not have title to the property).
[¶ 20] Relying on Enerplus Resources (USA) Corp. v. Wilkinson , No. 1:16-cv-103, 2017 U.S. Dist. WL 721977, at *3-4 (D.N.D. Feb. 23, 2017), the Mattsons contend that they are entitled to the amount awarded on the basis of Appellants' "retention of [Steven's] money for property they didn't own." In Enerplus , the U.S. District Court for the District of North Dakota stated, "The North Dakota Supreme Court has long held that, where a party in good faith and by mistake of fact, paid money to second party which the second party was not entitled to either legally or morally, an implied promise to repay such money arises immediately upon the mistaken payment." Id. at *3 ; see also Rohrville Farmers Union Elevator Co. v. Frison , 77 N.D. 235, 42 N.W.2d 354, 356 (1950) (stating that "payment made under the influence of a mistake of fact may be recovered provided that the payment has not caused the payee to change his position to his detriment").
[¶ 21] The mistake made here, however, was a mutual mistake of law-both parties failed to understand the legal effect of a joint tenancy. See Jacobson v. Mohall Telephone Co. , 34 N.D. 213, 157 N.W. 1033, 1034 (1916) (stating, "The rule seems to be almost universally established that a mistake of law, even though mutual, will not of itself entitle one to sue to recover money which has been voluntarily paid."). Thus, Steven Mattson's voluntary payment, made under mutual mistake with Leif's heirs, precludes recovery of the purchase price.
[¶ 22] The Mattsons argue that the Appellants waived this argument because they did not adequately raise it at the district court, arguing it only in their post-trial brief. "The rule limiting appeal to issues raised in the trial court is based upon the principle that it is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider." Roise v. Kurtz , 1998 ND 228, ¶ 9, 587 N.W.2d 573. The Appellants discussed the voluntary payment doctrine at length in their post-trial brief, and sufficient evidence was presented at trial to allow for the district court to make a ruling on the issue. The post-trial briefs were received simultaneously, *178 and the district court issued its order without reaching this issue. The Mattsons did not object to the issue being raised post-trial. Thus, we conclude that the voluntary payment doctrine was raised at the district court and is properly before us.
[¶ 23] Because an unjust enrichment cause of action cannot lie and the voluntary payment doctrine, as established in Jacobson , precludes Steven Mattson's recovery of the purchase price, the district court erred by granting him damages as it pertains to the purchase price.
V
[¶ 24] The district court concluded that the Trusts can recover the oil and gas lease payments from the Appellants under the theories of unjust enrichment and conversion. Conversion is the "tortious detention or destruction of personal property, or a wrongful exercise of dominion or control over the property inconsistent with or in defiance of the rights of the owner." Ritter, Laber and Associates, Inc. v. Koch Oil, Inc. , 2004 ND 117, ¶ 11, 680 N.W.2d 634. We have said that if a party "rightly came into possession and there was no wrongful taking of goods, demand and refusal to return may be required for conversion." Id. A trial court's determination on whether a conversion has been committed is a finding of fact subject to the clearly erroneous standard of review. Paxton v. Wiebe , 1998 ND 169, ¶ 29, 584 N.W.2d 72.
[¶ 25] The Appellants leased the mineral rights in the Property and retained rental payments pursuant to these leases, although they did not have a valid interest in the Property. The Appellants have thus wrongfully exercised dominion over the payments derived from the mineral interests belonging to the Trusts in a manner inconsistent with the rights of the Trusts. Steven Mattson demanded that the Appellants relinquish control of these payments, but they have failed to do so. Thus, the Appellants have converted the payments rightfully belonging to the Trusts. Because the conversion cause of action supports the district court's award of damages to the Trusts, we need not review whether unjust enrichment does also. See First Nat'l Bank of Belfield , 367 N.W.2d at 154.
[¶ 26] The Appellants argue that the voluntary payment doctrine bars recovery under a theory of conversion for the lease payments. The doctrine does not apply here, however, because the payments were between the oil and gas lessee and the Appellants, not the Appellants and the Trusts (or their predecessors-in-interest). Thus, the voluntary payment doctrine does not bar the Trusts from recovering lease payments on their property from the Appellants.
[¶ 27] The district court did not clearly err by awarding damages for the oil and gas lease payments to the Trusts.
VI
[¶ 28] Because the joint tenancy between Leif, Alf, and Roald Mattson was not severed prior to Leif Mattson's death, the district court did not clearly err by quieting title to the Property in the Steven R. Mattson Living Trust and the Roald F. Mattson Living Trust. Further, the district court did not clearly err by awarding damages to the Trusts for the oil and gas lease payments under a theory of conversion. However, because unjust enrichment was unavailable and the voluntary payment doctrine applies, the district court erred by awarding damages to Steven Mattson for the amount he paid to Leif's heirs for the purported interest they had in the surface of the Property. We affirm in part, reverse in part, and remand for entry of judgment consistent with this opinion.
[¶ 29] Jerod E. Tufte
Daniel J. Crothers
Lisa Fair McEvers
Jon J. Jensen
Gerald W. VandeWalle, C.J.