JAMES RIVER NATIONAL BANK OF JAMESTOWN, NORTH DAKOTA, A U. S. CORPORATION v. FRIED WEBER.

Opinion filed January 27, 1910.

**Appeal and Error—Findings Have Some Weight as a Verdict.**

> 1. The findings of the trial court in actions at law where a jury has been waived are entitled to the same weight as the verdict of a jury, and the same will be thus treated on appeal. Therefore such findings will not be disturbed unless they are clearly against the preponderance of the evidence.

**Banks and Banking—Findings—Evidence.**

> 2. Evidence examined, and held clearly sufficient to support the findings.

**Payment of Money Under Mistake of Fact—Recovery.**

> 3. Money paid under a mistake of fact to one not entitled thereto, and who cannot in good conscience receive and retain the same, may ordinarily be recovered back. Under such facts the law raises an implied promise on the payee's part to refund the amount of such payment.

**Payment Under Mistake—Recovery—Failure to Avail of Knowledge of Facts.**

> 4. The fact that plaintiff had the means of knowledge of the facts at his command, and negligently failed to avail himself thereof, will not defeat his recovery, where such negligence has not resulted in loss or damage to defendant.

Appeal from District Court, Stutsman county; *Burke, J.*

Action by the James River National Bank of Jamestown, N. D., against Fried Weber. Judgment for plaintiff, and defendant appeals.

Affirmed.

*F. Baldwin,* for appellant.

One paying money without compulsion, claimed by another as a matter of right, and paying with full knowledge of the fact, cannot recover it. Wyman v. Farnsworth, 3 Barb. 369; N. Y. & C. R. Co. v. Marsh, 2 Kern 308, 1 Wait's Law & P. 702; Mowatt v. Wright, 1 Wend. 355; Morton v. Ostrom, 33 Barb. 256; Forest v. Magor, 13 Abb. 350.

Money paid by one under a mistake of facts, which he had means of knowing, cannot be recovered. Winddiel v. Carroll, 16 Hun. 101 to 103; See Vol. 39 Cent. Dig. Col. 438, Sec. 267; Peterborough v. Lancaster, 14 N. H. 382; Gooding v. Morgan, 37 Me. 419; Pensacola Ry. v. Braxton, 16 So. 317; McArthur v. Luse, 5 N. W. 451; Wheeler v. Hatheway, 24 N. W. 780; Simmons v. Looney, 24 S. E. 677; Wiles v. McIntosh Co. 10 N. D. 594, 88 N. W. 710; Wessel v. Mortgage Co., 3 N. D. 160, 54 N. W. 922; Frederick v. Douglas Co., 71 N. W. 798; Anderson v. Cameron, 97 N. W. 1085.

*John Knauf,* for respondent.

Where one pays money under a mistake of right and duty, with no obligation to pay, and the recipient no right to receive, it may be recovered, whether the mistake is of law or fact. Northrup's Ex'rs. v. Graves, 19 Conn. 548, 50 Am. Dec. 264; U. N. Bank v.

Sixth N. Bank, 43 N. Y. 452; Mfgrs. N. Bank v. Perry, 144 Mass. 313; 2 Morse on Banks and Banking, 272 Col. 426, Cent. Dig. Vol. 39.

Overdrafts created by mistake, where payee of check is not damaged, and has fraudulently induced the check to be honored, may be recovered. Mowatt v. Wright, 1 Wend. 355, 19 Am. Dec. 508; Bulow v. Goddard, 9 Am. Dec. 663; Bull v. City of Quincy, 52 Ill. App. 186; Reynolds v. Rochester, 4 Ind. 43; Sheard v. Sears, 119 Mass. 143; Ely v. Padden, 13 N. Y. St. Rep. 53; Sleep v. Heymann, 57 Wis. 495, 16 N. W. 17; Whiting v. Bank, 77 N. Y. 365; Continental Nat'l. Bank v. Tradesmen's Nat'l. Bank, 36 App. Div. (Hun N. Y.) 112; Burkhalter v. Second Nat'l. Bank, 42 N. Y. 538; Mutual Savings Institution v. Enslin, 46 Mo. 200; Citizens' Bank v. Graflin, 31 Md. 507.

Money received under a mistake of fact or law or which the recipient has no right in good conscience to retain, may be recovered. Kane v. Morehouse, 46 Conn. 300; Culbreath v. Culbreath, 50 Am. Dec. 375; City of Covington v. Powell, 59 Ky. 226; City of Louisville v. Henning, 64 Ky. 381; McMurtry v. Ky. Central Ry. Co., 1 S. W. 815; Foster v. Kirby, 31 Mo. 496.

FISK, J.  This case originated in the district court of Stutsman county, and comes here on appeal from a judgment in plaintiff's favor. As the complaint discloses, the action is for the recovery of $319.71 with interest, which sum, it is alleged, was, on December 27, 1905, paid by plaintiff to defendant through mistake, induced by false representations made by defendant to plaintiff's officers. The answer puts in issue the material allegations of the complaint, and alleges facts tending to show that such payment was voluntarily made. A jury was expressly waived, and the cause submitted to the court, and after both parties had submitted their testimony, the court made its findings of fact and conclusions of law in plaintiff's favor, and ordered a judgment accordingly. The material portions of the findings are as follows: "That on December 27, 1905, the defendant made a certain check against said bank for the sum of $319.71, and represented to the teller, an officer of said bank, that he had said sum on deposit in said bank. That said statement so made was false and fraudulent, and made with the intent to deceive the officials of said bank, and that upon said representations so made the plaintiff, through its teller, paid to the defendant the said sum

of $319.71, and received the check of the defendant drawn against the said plaintiff for the payment of the said sum, and marked the same paid December 27, 1905. That the defendant did not have on deposit in said bank on December 27, 1905, the sum of $319.71, and that his representations to the plaintiff that he did have said sum on deposit in said bank were made with fraudulent intent to deceive the said bank, and to secure the said sum from the plaintiff. The court finds that the said plaintiff frequently demanded from the defendant the repayment of said sum, and that the said defendant refuses, and has wholly refused, the payment therefor. The court further finds that all the material allegations of the plaintiff's complaint are true. The court further finds that there is due the plaintiff, and against the defendant, the sum of $319.71, with interest thereon at the rate of 7 per cent per annum from December 27, 1905."

It is well settled that the findings of fact of the trial court in cases of this character are entitled to, and will be given, the same weight in this court as the verdict of a jury. As said by the present Chief Justice of this court in Ruettell v. Insurance Co., 16 N. D. 546, 113 N. W. 1029: "The weight to be given to the trial court's findings, when that court is clothed with the same functions as a jury in determining questions of fact, has often been before this court, and the following rule was laid down in an early case, and adopted in later decisions: 'Rather it intended, and such, we think, is the effect of the Wisconsin decisions, that, when a finding of fact made by the trial court was brought into this court for review upon proper exceptions, it should come like a legal conclusion, with all the presumptions in favor of its correctness, and with the burden resting upon the party alleging error of demonstrating the existence of such error. He must be able to show this court that such finding is against the preponderance of the testimony, and, where the finding is based on parol evidence, it will not be disturbed, unless clearly and unquestionably opposed to the preponderance of testimony.' Jasper v. Hazen, 4 N. D. 1, 58 N. W. 454, 23 L. R. A. 58; Dowagiac Mfg. Co. v. Hellekson, 13 N. D. 257, 100 N. W. 717." An examination of the testimony serves to convince us that the findings of the trial court are amply supported by the evidence. Indeed, appellant's counsel does not seriously contend to the contrary.

The whole controversy arises over the item of $319.71, which, sometime prior to October 7, 1905, was deposited in said bank to de-

fendant's credit by one Ogilvie. Plaintiff contends that defendant drew two checks against his account for this sum, which were paid by it. One on October 7th, and the other on December 27th. Defendant admits drawing both of such checks, but contends that the one on October 7th was not paid. Whether this first check was paid or not is the vital question in dispute. If it was paid, as contended by plaintiff, then it is undisputed that the check of December 27th overdrew defendant's account, the exact amount of such check. Both of such checks were introduced in evidence, and are marked paid on their face, with the dates of such payments "October 7, 1905," and "December 27, 1905," respectively. In addition to this the witness Mattison, teller of plaintiff's bank, positively testified to the payment of both checks on the dates above mentioned. Regarding the first check, he testified: "I have seen that before; it is a check signed by the defendant in my presence. The written portion of the check is mine, and was made October 7, 1905. It was charged to the defendant's account in the bank ledger. I paid him at that time on the check $319.71. It was on account of moneys a Mr. Ogilvie left for the defendant." Regarding the other check this witness testified: "It is a check of $319.71, signed by defendant on December 27, 1905, and drawn on plaintiff bank, and I paid him on that date the sum mentioned in the check. On October 7th, or about that time, Ogilvie left $319.71 for defendant, and from that time neither Mr. Ogilvie nor any other person has left any money to be paid defendant. At the time the second check was paid I had a talk with the defendant about the payment of the Ogilvie account. Defendant came in with his bank book, and began to talk in broken English and German, to the effect that I did not give him money for the check of October 7th; claimed that I would destroy the check, and I went to the ledger and turned to his account, which is our inactive account, and when the defendant claimed that I destroyed the check, and he did not get the money, I jumped to the conclusion that I had credited it back to his account instead of destroying the check. We never destroy checks. After the conversation I paid the second check. On that date the bank was busy, and I did not have time to ascertain from the books whether or not I had paid the amount before." The witness then shows by the bank ledger the status of defendant's account commencing September 8th and ending December 27th, which shows that on the latter date defendant's account was

overdrawn the exact amount of $319.71. The witness also testified that the bank books balanced on October 7th, and that if the first check had not been paid, they would not have done so. On cross-examination the witness admitted that if he had examined the books of the bank on December 27th when defendant was there, such books would have shown whether defendant's statement that he had not been paid said sum on October 7th was true or false, but witness says: "I took his word for it."

The testimony of the teller is corroborated by that of the Cashier DeNault. He testified that on December 8th defendant came to the bank and asked what his balance was, and he told him $62.80, and that defendant drew a check for such balance, which was then and there paid. His testimony is also corroborated by plaintiff's bookkeeper.

Defendant admits signing and delivering to the teller the first check, but says the teller promised to destroy the same, and that he received no money from the bank that day, and he says that shortly before December 27th, on looking over his canceled checks returned to him by the bank, he discovered this check charged to his account, and he went to the bank on December 27th with such check, and told the teller in substance that it was not paid, and should not be charged to him, whereupon the teller called for his passbook, and credited him with the item of $319.71. Defendant then stated that he did not want the credit, but wanted the cash, whereupon a check was drawn for such amount and paid by the bank. It was admitted by the defendant that the bank's books balanced October 7, 1905, and that they did not balance by $319.71 on December 27, 1905.

The foregoing is substantially the entire testimony in the case, and we think it entirely clear that the evidence preponderates in plaintiff's favor upon the vital question in dispute.

It seems to be the appellant's contention, in brief, that because plaintiff's teller, by consulting the books, could have learned the exact status of defendant's account, he had no right to rely upon defendant's statement that the check of October 7th had not been paid, and that he had a balance on December 27th of $319.71. And it is urged that for this reason the payment was a voluntary one, and cannot be recovered back. We are unable to uphold such contention. The facts as found by the trial court, and which we must accept as true, clearly present a case of a payment of such last check through mis-

take on the part of plaintiff's officer. Whether, as found, defend-
ant intentionally and fraudulently misled plaintiff's officer we need
not determine. It is enough that the plaintiff's bank in good faith
and by mistake of fact, parted with money to which defendant was
not entitled either legally or morally. The facts do not present a case
of the payment of money to adjust a disputed claim; nor do they
present a case of a voluntary payment calling for an application of
the doctrine announced by the authorities cited in appellant's brief.
In the light of the facts found an implied promise on defendant's
part to repay such money arose immediately upon the payment by
plaintiff of the last check. A proposition so elementary requires the
citation of no authorities, but see 15 Am. & Eng. Ency. of Law (2nd
Ed.) 1103-1105, and cases cited; also 30 Cyc. 1316 et seq., and
cases cited.

Upon the question of the right to recover moneys negligently
paid to another through a mistake of fact the authorities are some-
what in conflict, but the weight of authority and, as we think, the
better reasoned cases support such recovery. 15 Am. & Eng. Ency.
of Law, 1106-1107, and cases cited; 30 Cyc. 1320-1321, and cases
cited. We quote from the latter authority: "The fact that a per-
son, when making a payment, had the means of knowing the facts
does not of itself ordinarily preclude him from recovering back the
money, if he did not have actual knowledge." Fegan v. Great
Northern Ry. Co., 9 N. D. 30, 81 N. W. 39, presents a case where
a recovery was denied to plaintiff who had paid money to defendant
through negligence in not making an investigation of facts accessible
to him, but a controlling factor in the decision was the fact that
plaintiff's gross neglect in this respect resulted in loss to defendant.

Finding no error in the record, the judgment is affirmed. All
concur.