E. C. STEE, Plaintiff and Appellee,

v.

"L" MONTE INDUSTRIES, INC., and
Leo J. Boehm, Defendants and
Appellants.

Civ. No. 9220.

Supreme Court of North Dakota.

Nov. 19, 1976.

William R. Mills, Bismarck, for defendants and appellants.

Morris A. Tschider and Dennis A. Schneider, Bismarck, for plaintiff and appellee; argued by Dennis A. Schneider, Bismarck.

PEDERSON, Justice.

This is an appeal from a judgment and from an order denying a motion for new trial. We find no clearly erroneous findings of fact and no errors in the conclusions of law. The trial court did not abuse its discretion in denying the motion for a new trial.

Stee, a professional engineer, was engaged by Boehm to provide consulting engineering services for a housing development project in rural Morton County being constructed by "L" Monte Industries, Inc. Boehm was president, manager, and, for all practical purposes, the sole owner of the corporation. For his capital contribution to the corporation Boehm had the corporation execute a note to himself in the amount of $98,000.00.

After nine homes had been constructed, "L" Monte found it necessary to obtain additional financing, which it was not able to accomplish, and, because the subdivision was not acceptable to FHA, the nine completed homes could not be sold. In December 1972 the entire project was taken over by Berger and Sonduck. Included in the arrangements for the take-over were provisions for "L" Monte to become the owner of an apartment house in Bismarck, formerly owned by Berger and Sonduck, and Berger and Sonduck became the owners of the Morton County housing project and the lands involved. Some of the "L" Monte debts on the project were apparently assumed by Berger and Sonduck, and others, such as the claim of Stee, were continued as debts of "L" Monte. On January 3, 1973, "L" Monte conveyed the apartment house to Boehm and Boehm satisfied the $98,-000.00 note. It appears that as far as Boehm was concerned, by these actions, the corporation went out of existence.

Through the efforts of a Mandan accounting firm that handled "L" Monte record keeping, and a Bismarck CPA firm that handled "L" Monte tax matters, a fiscal year, ending January 31, 1973, tax return and financial statement were prepared. These documents did not recognize the $98,000.00 note from "L" Monte to Boehm as a debt of the corporation, but only as evidence of Boehm's capital investment. The financial statement (after the transfer of the apartment to Boehm) indicated that the only assets of the corporation were a claim against Boehm in the amount of $62,-117.00, some fixed assets valued at $8,941.00 after depreciation, and miscellaneous accounts receivable of $579.00. Included along with other liabilities were Boehm's capital stock of $98,000.00 and an account payable to Stee in the amount of $8,503.98.

When Stee brought this action against "L" Monte and Boehm to recover the $8,503.98 as an agreed engineering fee, he asked for a judgment declaring the transfer of the apartment by "L" Monte to Boehm

to be fraudulent, and that he be awarded a lien against the apartment. Boehm and "L" Monte answered separately, denying that the fee was an agreed or promised sum and denying the reasonableness of Stee's claim, denying that fraud was involved in the apartment transfer, and counterclaiming for $15,000.00 for damage suffered because of faulty engineering performed by Stee.

After a two-day trial to the court without a jury, the following findings and conclusions were entered:

### "FINDINGS OF FACT

"1. The plaintiff was engaged as an engineer to perform engineering services for the defendant corporation.

"2. The plaintiff performed these engineering services in an acceptable manner for the defendant corporation and the reasonable sum remaining due and owing for such services is $8,503.98.

"3. The defendant corporation failed to prove by a preponderance of the evidence its Counterclaims as to damages as a result of misplacement of manholes and the design of the water tank and further failed to prove that the lagoon was built in the place claimed by the defendant and that if the lagoon were misplaced by the plaintiff, the defendant failed to prove damages therefrom.

"4. The transfer by the corporation, accomplished by its sole stockholder and president, Leo J. Boehm, of property including an apartment house at the following described location: * * * was a transfer which rendered the corporation insolvent and constituted a fraud as to the creditors of the corporation.

"5. The transfer of the above described property was to the defendant, Leo J. Boehm, personally."

### "CONCLUSIONS OF LAW

"1. The defendants are indebted, jointly and severally, to the plaintiff, in the amount of $8,503.98.

"2. The defendants' counterclaims are dismissed for failure to prove damages and failure of proof by a preponderance of the evidence.

"3. The plaintiff is entitled to follow the proceeds of the fraudulent transfers and hence is entitled to have a lien against the real property and buildings thereon described above."

"L" Monte and Boehm did not submit proposed amended findings under Rule 52(b), N.D.R.Civ.P., but jointly moved for a new trial on the following grounds:

"1. The court abused its discretion in permitting the plaintiff to prove a case not raised by the pleadings and upon which discovery by the defendant had justifiably not been done.

"2. The evidence was insufficient to justify the decision and the decision was contrary to the evidence and the decision was contrary to law.

"3. The court erred in ruling that the daily records of Stee could have been discovered and the court would refuse them if produced.

"4. The court erred in sustaining the objection to the following question directed by defendants to the witness Orser: 'Now, can you tell from your records, after all these bills were paid off, what bills "L" Monte owed and what property they owned?'

"5. The court erred in dismissing entirely the counterclaim, for the evidence clearly showed incompetent performance by the plaintiff and financial loss therefrom to the defendants."

On their appeal, "L" Monte and Boehm state that the "grounds set out there [in the motion for new trial] are the issues for review." None of the five stated grounds for new trial make a direct attack against any of the specific findings of fact. We said in *Sorenson v. Olson*, 235 N.W.2d 892, 895 (N.D.1975):

"When no specific finding is challenged on appeal but all are attacked generally by a claim that the evidence does not support the findings, we determine only whether any finding on a controlling question is not supported by substantial evidence."

Although the supporting testimony may be disputed by contradictory testimony, and we could readily conclude that the evidence could support other findings, we are governed by Rule 52(a), N.D.R.Civ.P., in reviewing the findings that were made. That Rule provides, in part:

"Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

It might be more convenient if such a rule were located in our appellate rules rather than in the Rules of Civil Procedure; however, since it was incorporated into the civil rules on August 1, 1971, it has been applied as an appellate rule by this court, starting with a series of opinions in 1972 and 1973 to the present. In a most clearly articulated opinion, which was co-authored by former Chief Justice Strutz and Justice Vogel, *In re Estate of Elmer*, 210 N.W.2d 815, 819, 820 (N.D.1973), we said, inter alia:

" * * * we are bound by Rule 52(a). We are bound by it, whether we consider the decision of the lower court as conclusive upon us as to issues of fact as a jury verdict is, or whether we are bound by a slightly less severe standard, as the dissent urged * * * [in *Kleinjan*].[1]

\* \* \* \* \* \*

"A finding is 'clearly erroneous' only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made."

All of the opinions Shepardized under Rule 52(a) have made the same general interpretation of the Rule, not always in the same language but obviously giving the trial judge's finding a presumption of correctness which an appellant must overcome. In this case there is substantial evidence to support each of the findings and we are not left with a definite and firm conviction that a mistake has been made.

■ A finding by the trial court is not to be disturbed unless it is clearly erroneous, either upon a clear demonstration that it is without substantial evidentiary support or that it was induced by an erroneous view of the law.

## ISSUES RAISED ON MOTION FOR NEW TRIAL

■ 1. Appellants argue that the court abused its discretion in permitting Stee to prove a case not raised by the pleadings. The complaint alleges that "L" Monte promised to pay the $8,503.98 fee. The answer denies the promise and alleges that the amount is not reasonable. Proof of the promise and of the reasonableness of the fee are within the scope of the pleadings.

■ 2. The issue as to insufficiency of the evidence has been disposed of in the discussion, *supra*, of the application of Rule 52(a). Further comments are not warranted. Appellants argue here that the decision is contrary to law. We will assume, as the trial court did, that this challenges the conclusion that the conveyance of the apartment house by "L" Monte to Boehm was fraudulent as to creditors. Finding of fact # 4 states that the transfer of the apartment rendered the corporation insolvent. That finding is not clearly erroneous and, applying the provisions of the statute, § 13–02–04, NDCC, as follows:

"Every conveyance made and every obligation incurred by a person who is or thereby will be rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration";

the decision is not contrary to law.

■ 3. Appellants interpret a ruling by the trial court as excluding certain evi-

---

1. *Kleinjan v. Knutson*, 207 N.W.2d 247 (N.D. 1973). Giving trial court findings the same weight as jury verdicts predates the adoption of Rule 52(a), N.D.R.Civ.P. See Syllabus 1 in *James River Nat. Bank v. Weber*, 19 N.D. 702, 124 N.W. 952 (1910). See also, *Trinity Builders, Inc. v. Schaff*, 199 N.W.2d 914, 917 (N.D. 1972), relating the change in status of findings to the repeal of the de novo statute (Chap. 311, S.L.1971).

dence, to wit, daily records from which a summary had been prepared. Although a summary was attached to the complaint and a summary was marked as an exhibit during appellants' cross-examination of Stee, it was never offered and, therefore, appellants' demand for production of the daily records during their cross-examination of Stee did not present to the court any issue that related to the admissibility of any evidence. If the trial court's ruling was not readily understandable, the circumstances created by appellants made it so.

4. Sustaining an objection by Stee to a question by the appellants of an accountant as to what the records reflect was obviously not a final ruling against the evidence, in view of the court's specific invitation to the appellants to inquire further.

■ 5. Appellants claim that it was error to dismiss the counterclaim because the evidence clearly showed incompetent performance by Stee and financial loss therefrom to the appellants. This again indirectly challenges a finding of fact, # 2, which states that the services were performed in an acceptable manner. Such a challenge invokes Rule 52(a), which has been disposed of previously. This could also be construed to be an attack against conclusion of law # 2, wherein it is stated that the counterclaim is dismissed because of failure of proof. In *Struchynski v. Decker*, 194 N.W.2d 741, 744 (N.D.1972), we said that trial courts cannot simply dismiss for failure to prove but must state facts upon which that conclusion is based. Reversal is not justified in this case where we have actual findings and a thorough memorandum opinion which support the conclusion. The findings could have been better prepared.

■ Motions for new trial must be based upon one or more of the causes listed in Rule 59(b), N.D.R.Civ.P., and when we review an order denying a new trial we determine only if there was a manifest abuse of discretion. See *Piper v. Piper*, 239 N.W.2d 1, 3 (N.D.1976), where we said:

"We said in *Jore v. Saturday Night Club, Inc.*, 227 N.W.2d 889 (N.D.1975), that where the trial court denied a new trial we would not overturn on appeal unless it is clear that there was a manifest abuse of discretion, and in *Kresel v. Giese*, 231 N.W.2d 780 (N.D.1975), we said that whether a new trial should be granted rests 'almost entirely' in the discretion of the trial court."

We find nothing unreasonable, arbitrary, or unconscionable about the trial court's denial of the motion for a new trial and, accordingly, hold that no abuse of discretion has been shown.

## PREJUDGMENT INTEREST

■ The trial court directed that Stee have interest from and after February 1, 1973. Appellants argue that under *North American Pump Corp. v. Clay Equipment Corp.*, 199 N.W.2d 888 (N.D.1972), prejudgment interest is not allowed. That case involved an interpretation of § 32–03–04, NDCC, which provides:

"Every person who is entitled to recover damages certain or capable of being made certain by calculation, the right to recover which is vested in him upon a particular day, also is entitled to recover interest thereon from that day, except for such time as the debtor is prevented by law or by the act of the creditor from paying the debt."

We first note that the parties here do not distinguish cases which have involved § 32–03–05, rather than § 32–03–04. In all cases "not arising from contract" and in cases based upon "oppression, fraud, or malice," interest may be given in the discretion of the trier of facts. See, e. g., *Braaten v. Grabinski*, 77 N.D. 422, 43 N.W.2d 381 (1950). In such cases we apparently would not be concerned about the certainty of the amount of damages.

Although Stee's claim for damages arises out of a contract, there is also an allegation and finding of fraud in this case. Where damages claimed relate directly to fraud, § 32–03–05, not § 32–03–04, applies. Here, we conclude that the results would be the same so we treat the matter as involving only § 32–03–04, as the parties did.

Historically, present § 32–03–04, NDCC, can be traced back to Dakota Territorial Civil Code, § 1943, which was copied from a California statute adopted in 1872 [§ 3287 West's Annot. Civil Code, amended in 1967]. In *Macomber v. State*, 250 Cal.App.2d 391, 58 Cal.Rptr. 393 (1967), the California court said: (1) that the statute (§ 3287) allowed interest as damages by way of compensation for wrongful detention of money due when the sum is liquidated or ascertainable within the statutory meaning; (2) that interest cannot be awarded prior to judgment when the amount of damages cannot be ascertained except upon conflicting evidence; and (3) that the rationale for such rule is that where the defendant does not know what amount he owes and cannot ascertain the amount without accord or judicial process, he cannot be in default for not paying it. See annotation in 60 A.L.R.3d 487, at 506.

The author of 60 A.L.R.3d 487 states that the allowance of interest incident to civil litigation is a vexatious question with little uniformity in either the statutes, the cases, or the law of the several jurisdictions in this country, quoting from the Supreme Court of Nevada in the case of *Paradise Homes, Inc. v. Central Surety & Ins. Corp.*, 84 Nev. 109, 437 P.2d 78 (1968).

Whether the purpose of the legislation is to penalize the defendant for the wrongful detention of money justly due or owing, or whether it is to provide more just compensation to the plaintiff, may be a vexatious question. Likewise, it may be impossible to prescribe a practical and workable rule which can be applied in all cases so as to make it easy to determine the certainty of the amount of damages vested at a specific time prior to judgment. We have no such difficult question in this case. "L" Monte, through its accountants, established on January 31, 1973, that the sum owed Stee was $8,503.98. Neither "L" Monte nor Boehm can now be heard to complain that the amount of the fee was uncertain on February 1, 1973.

This court has not been able to prescribe a test for determining the certainty of a damage claim which is more definitive than the statute itself. We do not agree with appellants that the language in *North American Pump Corp. v. Clay Equipment Corp.*, supra, holds that a claim becomes unliquidated by reason of the fact that it is disputed or that it is the subject of reasonable controversy. That case involved a breach of contract and the reference therein to 25 C.J.S. Damages § 52 b, was in connection with a claim, the amount of which was *"uncertain, unliquidated, and disputed."* [Emphasis added.]

■ We hold that a "certain" or "liquidated" claim does not become "uncertain" or "unliquidated" by reason of action by a defendant to either dispute it or to put forth an unliquidated set-off or counterclaim. Counsel for "L" Monte and Boehm seem to say that *North American Pump Corp. v. Clay Equipment Corp.*, supra, is being interpreted as holding that claims are unliquidated if they are "hotly contested."

In our most recent application of § 32–03–04, NDCC, *Farmers Union Grain Terminal Ass'n v. Nelson*, 223 N.W.2d 494 (N.D. 1974), there was a vigorously disputed claim for damages for an alleged breach (repudiation) of a grain purchase contract. We said that the appropriate date for the commencement of interest is the date on which the contract was repudiated. Another recent, hotly contested action (twice appealed to this court) involved an arbitration award where prejudgment interest was allowed by the arbiters and affirmed by this court. *Nelson Paving Co., Inc. v. Hjelle*, 207 N.W.2d 225 (N.D.1973).

■ The trial court did not err in awarding prejudgment interest. The judgment and the order denying a new trial are affirmed.

ERICKSTAD, C. J., and PAULSON, SAND and VOGEL, JJ., concur.