**PRIDE LABORATORIES, INC., doing business as Stat Enterprises, Plaintiff and Appellee,**

v.

**SENTINEL BUTTE FARMERS ELEVATOR COMPANY, a cooperative, Defendant and Appellant.**

**Civ. No. 9461.**

Supreme Court of North Dakota.

July 13, 1978.

As Corrected Sept. 7, 1978.

Freed, Dynes, Malloy & Reichert, Dickinson, for plaintiff and appellee; argued by George T. Dynes, Dickinson.

Orrin B. Lovell, Beach, for defendant and appellant.

PEDERSON, Justice.

This is an appeal by the Sentinel Butte Farmers Elevator Company (hereinafter elevator) from the judgment of the district court directing the elevator to pay Pride Laboratories, Inc. (hereinafter Pride), for 36 quarts of pyrenone, a concentrated insecticide, presently stored in the elevator's warehouse. We affirm the judgment.

Facts found by the trial court disclose that the elevator employed Marlyn Ordahl as its general manager with general authority to make purchases, and that this authority existed during all times material to this case. The court found that Ordahl ordered the pyrenone by telephone from Pride's New York offices, confirmed the order, and accepted delivery of the pyrenone some ten days later. From these facts the court concluded that all of these actions by Ordahl were fully binding on the elevator and that a contract for the sale of the pyrenone was made in New York.

The trial court further found as a fact that this was a sale between merchants. It concluded therefrom that the statute of frauds was satisfied when the seller sent a written invoice, which was received by the elevator. It concluded further that the receipt and acceptance of the goods removed the transaction from the operation of the statute of frauds.

Finally, the court concluded that the registration requirements of § 19–18–03, NDCC, did not apply to this transaction.

The elevator described the issues it wished to raise on this appeal as follows:

"1. If there was a contract for the purchase of the Pyronone, was this contract énforceable under the statute of fraud (North Dakota Century Code 41–02–08) in that the alleged contract for the sale of goods is not evidenced by writing sufficient to indicate a contract for sale had been made between the parties. If such writing was in existence, was the same sufficient against the sender and was it received by the defendant, who had reason to know its content.

"2. In the event that the alleged contract complied with the statute of fraud,

then was there actually a meeting of the minds between the parties as to the terms and conditions of such contract.

"3. In any event, was this an illegal contract as a result of: (a) sale of an economic poison for use within this state without registration pursuant to 19–18–04 and 19–18–03 NDCC; (b) failure to have a pesticide dealer license as provided by 4–35–12 NDCC; (c) whether or not the product was properly packaged pursuant to 19–18–03 NDCC."

Although these issues make no explicit challenge that any of the trial court's findings of fact are clearly erroneous (Rule 52(a), NDRCivP), counsel, on oral argument, says there is error in the findings. We conclude that each of the findings is supported by substantial evidence.

"A finding is 'clearly erroneous' only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made." *In re Estate of Elmer*, 210 N.W.2d 815, 820 (N.D.1973).

"A finding by the trial court is not to be disturbed unless it is clearly erroneous, either upon a clear demonstration that it is without substantial evidentiary support or that it was induced by an erroneous view of the law." *Stee v. "L" Monte Industries, Inc.*, 247 N.W.2d 641 (N.D. 1976).

## MUTUALITY OF ASSENT

■ The elevator argues that there could not be a contract between it and Pride because there was no "meeting of the minds." This is, in fact, an attack on the trial court's findings that the elevator's agent had authority to contract and did contract for the purchase of pyrenone. As this Court explained in *Amann v. Frederick*, 257 N.W.2d 436, 439 (N.D.1977):

"The invocation of the shorthand expression 'meeting of the minds' is more misleading than helpful in deciding contract issues."

We added in that case:

" 'Assent, in the sense of the law, is a matter of overt acts, not of inward una-nimity in motives, design, or the interpretation of words.' "

Although the testimony was disputed, there was substantial evidence which, if believed by the trier of facts, supports the findings of fact that Ordahl acted with full authority in behalf of the elevator when he placed the order for the pyrenone, when he confirmed the order the following day, when he accepted delivery without protest when it arrived, and when he placed it in the elevator's warehouse. We do not re-try fact questions under such circumstances. Rule 52(a), NDRCivP.

■ The findings of fact support the conclusion that a contract was indeed formed by acts which constitute a mutual assent thereto. No specific writing is required.

## STATUTE OF FRAUDS

■ The elevator asserts that even if there was a contract it is not enforceable under the statute of frauds. Section 41–02–08, NDCC (UCC 2–201), provides, in part:

"Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made   .   .   .."

One exception, where the statute of frauds permits enforcement of an otherwise unenforceable sales contract, is where the goods have been "received and accepted." Section 41–02–08(3)(c). It is not disputed that the pyrenone was received. Section 41–02–69 (UCC 2–606), NDCC, prescribes that goods are accepted when the buyer "fails to make an effective rejection,   .   . but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them;   .   .   .."

Although there was evidence of an attempt by the elevator to reject the pyrenone, the trial court found that the attempt, made almost three months after de-

livery and acceptance, was not effective. Section 41–02–65 (UCC 2–602), NDCC, provides, in part:

"Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller."

Nothing in the record supports the argument that it was error for the court to conclude that three months was not a reasonable time under the circumstances of this case. We hold that the statute of frauds did not render this contract unenforceable.

## UNLAWFUL CONTRACT

■ The elevator's final contention is that the contract is unenforceable because it is a contract to do an act forbidden by law.

"It is generally the law in this state and elsewhere that a contract to do an act forbidden by express provision of law is unenforcible and the courts will not lend their aid to parties engaged in such an illegal transaction." [Citation omitted.] *Loy v. Kessler*, 76 N.D. 738, 39 N.W.2d 260, 267 (1949).

The elevator argues that § 19–18–03, NDCC, forbids the sale of unregistered and improperly packaged or labeled pyrenone, an economic poison. This section provides, in part:

"No person shall distribute, sell, or offer for sale within this state or deliver for transportation or transport in intrastate commerce or between points within this state through any point outside this state any of the following:

"1. Any economic poison which has not been registered pursuant to the provisions of section 19–18–04, . . .

"2. Any economic poison unless it is in the registrant's or the manufacturer's unbroken immediate container, and there is affixed to such container, and to the outside container or wrapper of the retail package, if there be one through which the required information on the immediate container cannot be clearly read, a label bearing:

a. The name and address of the manufacturer, registrant, or person for whom manufactured;

b. The name, brand, or trademark under which said article is sold; and

c. The net weight or measure of the content subject, however, to such reasonable variations as the commissioner may permit;"

It is further contended by the elevator that Pride's failure to obtain a license pursuant to the requirements of § 4–35–12, NDCC, makes the contract illegal and unenforceable. Section 4–35–12 provides, in part:

"It shall be unlawful for any person to distribute restricted use pesticides or assume to act as a restricted use pesticide dealer, at any time, without first having obtained an annual license . . . . ."

The trial court first of all found that "the testimony presented to the Court failed to prove that pyrenone was not registered in North Dakota during 1975." In our review of the entire evidence we are not left with a definite and firm conviction that the trial court made a mistake in this finding. Additionally, the trial court concluded that pyrenone was not required to be registered before the sale from Pride to the elevator. We agree with this conclusion.

■ Within the scope of § 19–18–03(1) and (2), NDCC, Pride made no distribution, sale, or offer for sale of pyrenone in North Dakota. Pride was not acting as a dealer with a location or outlet in North Dakota and hence was not required by § 4–35–12, NDCC, to obtain a pesticide dealer license.

The sales contract in this case is valid and enforceable. The judgment is affirmed.

ERICKSTAD, C. J., and PAULSON, SAND and VOGEL, JJ., concur.