PRODUCTION CREDIT ASSOCIATION
OF MANDAN, North Dakota, a Corporation, Plaintiff and Appellee,

v.

Alvin Otos OLSON, Defendant
and Appellee,

Judith P. Garlington, Defendant
and Appellant,

and

Helen E. Olson, Defendant and Appellee.

Civ. No. 9577.

Supreme Court of North Dakota.

June 18, 1979.

Rehearing Denied July 11, 1979.

Bair, Brown & Kautzmann, Mandan, for plaintiff and appellee, Production Credit Association of Mandan; argued by Malcolm H. Brown, Mandan.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for defendant and appellant, Judith P. Garlington; argued by Gordon W. Schnell, Dickinson.

Dale W. Moench, Dickinson, for defendant and appellee, Helen E. Olson.

Jerome L. Jaynes, Bozeman, Mont., for defendant and appellee, Alvin Otos Olson; no appearance.

ERICKSTAD, Chief Justice.

Judith Garlington appeals from a district court judgment dated September 11, 1978, that held the transfer of certain real estate from the defendants, Alvin and Helen Olson, to defendant, Judith Garlington, was a fraudulent transfer of real property pursuant to Sections 13–01–05 and 13–02–04, N.D.C.C. The judgment also provided that title to the property remain in Alvin and Helen Olson, subject to a previous judgment of the plaintiff, Production Credit Association of Mandan (PCA). We affirm.

In 1964, John and Pearl Olson conveyed 560 acres of real estate located in Adams County, North Dakota, which is the subject matter of this lawsuit, to their son, Alvin Olson. They also conveyed 320 acres each to their daughters, Judith Garlington and Joyce Olson. John and Pearl reserved a life estate in each of the conveyances. In 1965, Joyce died. In 1973, John died, and on March 16, 1974, Pearl released her life estate in the property conveyed to Alvin and Judith.

Following the conveyance of the property, Alvin was in farming and cattle feeding business with his wife, Helen, and also owned other real estate. In 1968, Alvin and Helen began to finance their business through PCA. They continued to borrow money from PCA, signing their last promissory note in November, 1974, for an amount in excess of $500,000. These PCA obligations were secured by security agreements covering cattle, machinery, and real estate. PCA did not have a security interest in the real estate involved in this action.

Late in 1974, PCA advised Alvin that it could no longer finance his operation due to his increased debt. Alvin subsequently began to liquidate his operation. By June, 1975, the Olsons had liquidated all of their cattle and machinery and some of their real estate, but were still indebted to PCA in the amount of $237,579.33.

On July 8, 1975, PCA brought suit in Adams County District Court seeking to foreclose on real estate mortgages given by Alvin and Helen on real estate located in Adams County, but not including the 560 acres involved in this action. On February 10, 1976, judgment was entered in favor of PCA for $172,989.94. On May 6, 1976, the real property subject to the judgment was sold and PCA subsequently commenced a deficiency judgment action against Alvin and Helen for the balance. On April 5, 1977, the district court awarded PCA a deficiency judgment of $98,250.92.

Prior to these lawsuits by PCA, Alvin and Helen transferred the 560 acres in question to Alvin's sister, Judith Garlington. Although the date of this conveyance is disputed, the district court found that the deed, dated December 4, 1974, was signed on April 25, 1975, and recorded on April 29, 1975. On April 26, 1975, Judith transferred the real property back to Helen Olson by quit claim deed. In February, 1977, Alvin obtained the original of the quit claim deed and destroyed it.

PCA instituted this action against Garlington and Alvin and Helen Olson by amended summons and complaint dated De-

cember 9, 1977, alleging that the transfer of the property to Garlington was fraudulent and should be set aside.

The district court made the following conclusions of law, all of which are in essence challenged on this appeal:

## "CONCLUSIONS OF LAW

"The transfer of the property described above from the Defendants, Alvin Otos Olson and Helen E. Olson, to the Defendant, Judith P. Garlington, was made with intent to delay and defraud the Plaintiff, Production Credit Association, from collection of a valid debt against the Defendants, Alvin Otos Olson and Helen E. Olson, was part of a scheme and plan by the Defendants, Alvin Otos Olson and Helen E. Olson, to deliberately deprive the Plaintiff of a means of realizing their total indebtedness, and was made without valid, legal or fair consideration and thereby rendered the Defendants, Alvin Otos Olson and Helen E. Olson, insolvent and as to the Plaintiff, Production Credit Association, is a fraudulent transfer within the meaning of Sections 13–01–05 and 13–02–04 of the North Dakota Century Code, is void and is hereby set aside.

## "II

"Title to said property remains in the Defendants, Alvin Otos Olson and Helen E. Olson, as their interest appeared prior to the Deed dated December 4, 1974, subject to the Judgment of the Plaintiff, Production Credit Association against said property in the amount of $98,250.92 as of April 5, 1977.

## "III

"As the purported transfer from Alvin Otos Olson and Helen E. Olson to the Defendant, Judith P. Garlington, is void and has hereby been set aside, the purported transfer of said property from the Defendant, Judith P. Garlington, and her husband, to the Defendant, Helen E. Olson, was ineffectual."

The appellant states the following issues for review in this court:

"(1) Whether a fraudulent transfer was sufficiently pleaded so as to state a claim upon which relief can be granted, despite the failure to allege either insolvency or intent to defraud.

"(2) Whether the elements of insolvency or intent to defraud were sufficiently proven to establish a fraudulent transfer, as a matter of law.

"(3) Whether Helen's testimony should have been barred under the husband-wife privilege statute in effect at the time of the communication testified to."

Garlington first argues that PCA failed "to plead the essential elements of the statutory remedies which it is seeking." Sections 13–01–05 and 13–02–04, N.D.C.C., are the relevant statutes and provide as follows:

"13–01–05. *Transfers with intent to defraud or delay creditors are void.*—Every transfer of property or charge made thereon, every obligation incurred, and every judicial proceeding taken, with intent to delay or defraud any creditor or other person of his demands, whether or not the same is valid as between the parties thereto, is void as against all creditors of the debtor and their successors in interest and against any persons upon whom the estate of the debtor devolves in trust for the benefit of others than the debtor."

"13–02–04. *Conveyances by insolvent.* —Every conveyance made and every obligation incurred by a person who is or thereby will be rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

*See also* Section 13–02–07, N.D.C.C.; *H. A. Thompson & Sons, Inc. v. Hahn,* 135 N.W.2d 166 (N.D.1965).

Garlington argues that PCA did not properly allege in its complaint in this action that Alvin made the transfer in question with "intent to delay or defraud any creditor", which is an element of Section 13–01–

05, N.D.C.C., and it did not allege that the transferor "is or thereby will be rendered insolvent," which is required by Section 13–02–04, N.D.C.C.

PCA responds that its complaint constituted a sufficient pleading pursuant to the North Dakota Rules of Civil Procedure. PCA also argues that because Garlington did not make a motion to dismiss the complaint at any time for lack of a specific allegation, even if the issues were not properly raised by the pleadings, they were tried with the parties' consent. *See Anderson v. Mooney,* 279 N.W.2d 423 (N.D.1979); *Sobolik v. Vavrowsky,* 146 N.W.2d 761, 766 (N.D. 1966).

PCA contends that paragraph IX of its amended complaint and the prayer for relief provide the crucial allegations:

"IX

"By Warranty Deed dated December 4, 1974, but actually signed on or about April 25, 1975, the defendants, Alvin Otos Olson and Helen E. Olson, transferred to defendant, Judith P. Garlington, the following described real property located in Adams County, North Dakota:

\*　\*　\*　\*　\*　\*

Said transfer was made without consideration, was made to remove said property from the effects of a potential judgment by the plaintiff, Production Credit Association, against the defendant, Alvin Otos Olson, and was part of a scheme and plan by Alvin Otos Olson to deliberately deprive the plaintiff of a means of realizing the total indebtedness of the defendants to the plaintiff.

\*　\*　\*　\*　\*　\*

"WHEREFORE, the plaintiff prays as follows:

"1. That the Court determine that the purported transfer of said real property from the defendants, Alvin Otos Olson and Helen E. Olson, to the defendant, Judith P. Garlington, purportedly on or about December 4, 1974, be set aside as a fraud,"

■ Although the prayer for relief does not constitute part of the complaint, the court may look to the prayer for relief as a means of clarifying the contentions of the parties and the issues raised. *Trauger v. Helm Bros., Inc.,* 279 N.W.2d 406 (N.D. 1979); *In re Murray,* 145 N.W.2d 899 (N.D. 1966), *overruled on other grounds, Kee v. Redlin,* 203 N.W.2d 423, 426 (N.D.1973); *Rank v. Krug,* 90 F.Supp. 773 (S.D.Cal. 1950).

Rule 8, N.D.R.Civ.P., provides the general rules of pleading, and subsections (a), (e), and (f) are especially relevant:

"(a) *Claims for relief.* A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which he deems himself entitled. Relief in the alternative or of several different types may be demanded.

\*　\*　\*　\*　\*　\*

"(e) *Pleading to be Concise and Direct —Consistency.*

(1) Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required.

(2) A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as he has regardless of consistency and whether based on legal or on equitable grounds or on both. All statements shall be made subject to the obligations set forth in Rule 11.

"(f) *Construction of Pleadings.* All pleadings shall be so construed as to do substantial justice."

Wright and Miller in their treatise on the Federal Rules of Civil Procedure, after which the North Dakota Rules are patterned, state the objective and function of pleadings under the modern rules:

"Rule 8 is the keystone of the system of pleading embodied in the federal rules. This is especially true of Rules 8(a)(2) [Rule 8(a)(1) in the North Dakota Rules], 8(e), and 8(f). These provisions state that technical forms of pleading are not required, that pleadings are to be construed liberally so as to do substantial justice, and, most important of all, they substitute the requirement of 'a short and plain statement of the claim showing that the pleader is entitled to relief' for the familiar formula 'facts constituting a cause of action,' which typified the codes. As a practical matter these provisions have ramifications that transcend the pleading stage of federal practice. To some degree, the functioning of all the procedures in the federal rules for broad joinder of parties and claims, discovery, free amendment, and summary judgment are inextricably intertwined with the pleading philosophy embodied in Rule 8.

"Historically, pleadings have served four major functions: (1) giving notice of the nature of a claim or defense; (2) stating the facts each party believes to exist; (3) narrowing the issues that must be litigated; and (4) providing a means for speedy disposition of sham claims and insubstantial defenses. The relative importance of each of these four functions has varied greatly through the years and from jurisdiction to jurisdiction, but both at common law and under the codes the burden of performing all four was expected to be borne by the pleadings. The complaint not only gave notice of the nature of plaintiff's case but also was required to state the facts constituting the cause of action. Subsequent pleadings were expected to narrow and shape the issues until the case was ready for trial. Failure to incorporate an essential allegation might lead to a speedy end of the litigation by way of demurrer or a motion to dismiss. Since the pleadings were expected to perform so many duties, it was natural that strict rules should develop as to them, which in turn meant that many cases were disposed of on pleading defects without regard to the merits of the controversy.

"The federal rules provide techniques that are more efficient than pleading for performing the last three of the four traditional pleading functions. The relevant facts may be determined by discovery. The issues likewise may be narrowed by discovery, or by a pretrial conference, or by 'partial summary judgment' under Rule 56(d). Moreover, cases in which there is no real controversy may be disposed of speedily, finally, and on the merits, by summary judgment. This is not to deny that the pleadings, in some cases, will still assist in performing one or more of these three functions; rather, what is being suggested is that the pleadings no longer carry exclusive responsibility for them. The only function left to be performed by the pleadings alone is that of notice. Thus, pleadings under the rules may simply be a general summary of the party's position that is sufficient to advise the other party of the event being sued upon, to provide some guidance as to what was decided for purposes of res judicata, and to indicate whether the case should be tried to the court or to a jury. No more is demanded of the pleadings than this; indeed, history shows that no more can successfully be performed by the pleadings." Wright & Miller, Federal Practice and Procedure: Civil § 1202.

Thus, the objective of the Rules of Civil Procedure, as indicated by Rule 8, is "to avoid technicalities and to require that the pleading discharge the function of giving the opposing party fair notice of the nature and basis or grounds of the claim and a general indication of the type of litigation involved; the discovery process bears the burden of filling in the details." Wright & Miller, *supra,* § 1215; *see also Stearns v. Twin Butte Public School District No. 1,* 185 N.W.2d 641, 645 (N.D.1971).

We believe that the complaint in this case served this function. Garlington argues, however, that because an allegation of fraud is involved in this case, Rule 9(b), N.D.R.Civ.P., applies and more specificity is required than is mandated by Rule 8. *Sobolik v. Vavrowsky, supra* at 765–766. Rule 9(b) provides in part that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Wright and Miller comment on the particularity requirement of Rule 9(b) as follows:

"Of primary importance in understanding the particularity requirement of Rule 9(b) is the recognition that it does not render the general principles set forth in Rule 8 entirely inapplicable to pleadings alleging fraud; rather, the two rules must be read in conjunction with each other. It should be kept in mind that Rule 8(a) requests 'a short and plain statement of the claim' for relief; Rule 8(b) requires the same to be true of defenses; Rule 8(e) calls for 'simple, concise, and direct' averments in a pleading and goes on to state that 'no technical forms of pleading * * * are required' and that a pleading may be internally inconsistent; and Rule 8(f) provides that 'all pleadings shall be so construed as to do substantial justice.' Thus, it is inappropriate to focus exclusively on the fact that Rule 9(b) requires particularity in pleading fraud. This is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.

"The proper balance between the simplicity sought in Rule 8 and the particularity required by Rule 9 is demonstrated by the illustrative fraud claim set out in Official Form 13, which is expressly declared to be a sufficient pleading by Rule 84. According to the Form, it is proper merely to allege that plaintiff seeks to have a conveyance set aside on the ground that 'Defendant C.D. on or about * * * conveyed all his property, real and personal to defendant E.F. for the purpose of defrauding plaintiff and hindering and delaying the collection of the

indebtedness evidenced by the note above referred to.'" Wright & Miller, *supra*, § 1298.

■ We hold that PCA's pleadings were sufficient pursuant to Rules 8 and 9, N.D.R. Civ.P.

Garlington next argues that PCA failed to prove the elements of a fraudulent transfer pursuant to Section 13–01–05, N.D.C.C. or Section 13–02–04, N.D.C.C. She contends that PCA failed to prove that Alvin was insolvent at the time of the transfer complained of or that the transfer was without a fair consideration pursuant to Section 13–02–04, N.D.C.C. She also argues that PCA failed to prove an intent to defraud pursuant to Section 13–01–05, N.D. C.C.

The district court made the following relevant findings of fact on this issue:

"X

"By Warranty Deed dated December 4, 1974, but actually signed on or about April 25, 1975, and recorded in the Adams County Register of Deeds office on April 29, 1975, . . . the Defendants, Alvin Otos Olson and Helen E. Olson, transferred to Defendant, Judith P. Garlington, the following described real property located in Adams County, North Dakota:

\* \* \* \* \* \*

Said transfer was made during the period of time the Defendants, Alvin Otos Olson and Helen E. Olson, were liquidating their farming operation, and involved no monetary consideration.

\* \* \* \* \* \*

"The transfer of the real estate described in the Complaint . . . [was] without fair consideration [and] was intended to delay and defraud the Plaintiff, Production Credit Association, from the collection of the total sums due it from the Defendants, Alvin Otos Olson and Helen E. Olson, and rendered the Defendants, Alvin Otos Olson and Helen E. Olson, insolvent."

When reviewing findings of fact made by the trial court, we are governed by Rule 52(a), N.D.R.Civ.P., and we will not set aside the findings unless they are clearly erroneous. *Stee v. "L" Monte Industries, Inc.*, 247 N.W.2d 641, 644 (N.D.1976); *In re Estate of Elmer*, 210 N.W.2d 815, 819–820 (N.D.1973). Thus, the trial court's findings are glossed with a "presumption of correctness which an appellant must overcome." *Stee v. "L" Monte Industries, Inc., supra* at 644.

Chapter 13–02, N.D.C.C., is the North Dakota codification of the Uniform Fraudulent Conveyance Act and has been adopted in 25 states. The commissioners' prefatory note states that a gift by an insolvent is a fraudulent transfer regardless of the donor's intent. 7A Uniform Fraudulent Conveyance Act (U.L.A.) 161–62. Section 13–02–02(1), N.D.C.C., defines a person as insolvent when "the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." Section 13–02–03, N.D.C.C., defines "fair consideration" as follows:

"13–02–03. *Fair consideration.*—Fair consideration is given for property, or obligation:

1. When in exchange for such property or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied; or

2. When such property or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property or obligation obtained."

Garlington argues that Alvin transferred the property to her to fulfill a request made by their mother in October 1973. Garlington contends that Alvin had borrowed a substantial sum of money from his parents and the conveyance was made in an attempt to equitably distribute the estate. Thus, Garlington argues that the transfer was for fair consideration pursuant to Chapter 13–02, N.D.C.C. We find, after reviewing the transcript, that substantial evidence exists from which the district court could conclude that the conveyance was without fair consideration, including Pearl Olson's will, a letter by Pearl explaining her intentions regarding the division of her estate, and testimony by Helen Olson. Without deciding whether or not Alvin had any intent to defraud PCA pursuant to Section 13–01–05, N.D.C.C., we find that there is substantial evidence to support the district court's findings that Alvin was insolvent at the time of the transfer and that the transfer was without fair consideration pursuant to Chapter 13–02, N.D.C.C.

Garlington's remaining issue is that the district court erred in allowing Helen Olson to testify in this case because of the husband-wife privilege. The North Dakota Rules of Evidence were adopted by the North Dakota Supreme Court on December 1, 1976, and were effective on February 15, 1977. Thus, they were applicable at the time of the trial in this case. Rule 504 deals with husband-wife privilege and provides as follows:

"(a) *Definition.* A communication is confidential if it is made privately by any person to his or her spouse and is not intended for disclosure to any other person.

"(b) *General rule of privilege.* An accused in a criminal proceeding has a privilege to prevent his spouse from testifying as to any confidential communication between the accused and the spouse.

"(c) *Who may claim the privilege.* The privilege may be claimed by the accused or by the spouse on behalf of the accused. The authority of the spouse to do so is presumed.

"(d) *Exceptions.* There is no privilege under this rule in a proceeding in which one spouse is charged with a crime against the person or property of (1) the other, (2) a child of either, (3) a person residing in the household of either, or (4) a third person, committed in the course of committing a crime against any of them."

Although Garlington acknowledges that Rule 504, N.D.R.Evid., provides for a husband-wife privilege only in criminal cases, he argues, without citing any authority, that because Section 31–01–02, N.D.C.C., was in effect at the time of the communication testified to by Helen, Alvin had a vested right under the statute "to be free from his wife testifying against him", and this could not be destroyed by the adoption of the Rules of Evidence.[1]

 The North Dakota Supreme Court has the authority pursuant to Section 87 of the North Dakota Constitution to promulgate rules of procedure to be followed by the courts of this state. *See also* Sections 27–02–07 through 27–02–15, N.D.C.C. In *Arneson v. Olson,* 270 N.W.2d 125, 131 (N.D. 1978), we stated that " 'procedure' includes pleading and evidentiary matters." The Procedure Committee Notes to Rule 504 state that Section 31–01–02, N.D.C.C., is superseded by the Rule. Consequently, we hold that the trial court did not commit error in refusing to apply Section 31–01–02, N.D.C.C., to this case.

We affirm the district court judgment.

SAND, PAULSON, PEDERSON, and VANDE WALLE, JJ., concur.

---

1. "31–01–02. *Competency of husband or wife as witness—Communications made during marriage—Exceptions.*—A husband cannot be examined as a witness for or against his wife without her consent, nor a wife for or against her husband without his consent, nor can either, during the marriage or afterwards, without the consent of the other, be examined as to any communication made by one to the other during the marriage. This section, however, shall not apply to a civil action or proceeding by one against the other, nor to a civil action or proceeding where one spouse attacks the character of the other, nor to a criminal action or proceeding for a crime committed by one against the other, nor to an action or proceeding to enforce support of minor children." § 31–01–02, N.D.C.C.